QUINTO v CROSS AND PETERS COMPANY

Docket No. 99057. Argued October 12, 1995 (Calendar No. 10). Decided
    May 14, 1996.

Elena Quinto brought a civil rights action in the Wayne Circuit Court
    against Cross and Peters Company, her employer, alleging that her
    supervisor demeaned and humiliated her, made discriminatory
    decisions, and created a hostile work environment on the basis of
    her age, sex, and national origin. The court, Lucile A. Watts, J.,
    granted summary disposition for the defendant, finding that the
    plaintiff failed to sufficiently document a prima facie case of hos-
    tile work environment. The Court of Appeals, CORRIGAN, P.J., and
    GRIBBS and G. E. MONTGOMERY, JJ., affirmed in an unpublished mem-
    orandum opinion (Docket No. 151198). The plaintiff appeals.

In an opinion by Justice BOYLE, joined by Chief Justice BRICKLEY,
    and Justices CAVANAGH, RILEY, and MALLETT, the Supreme Court held:

The plaintiff failed to sufficiently support a prima facie case of
    hostile work environment with documentary evidence.

To survive summary disposition, the plaintiff was required to
    present documentary evidence to the trial court that a genuine
    issue existed whether a reasonable person, in the totality of the cir-
    cumstances, would find the supervisor's comments to her suffi-
    ciently severe or pervasive to create a hostile work environment.
    The plaintiff's affidavit did not satisfy her burden under MCR
    2.116(C)(10) as the opposing party to respond with specific facts.
    Rather, the affidavit contained mere conclusory allegations and
    was devoid of detail that would permit the conclusion that there
    was such conduct or communication of a type or severity that a
    reasonable person could find that a hostile work environment
    existed.

Affirmed.

Justice LEVIN, dissenting, stated that the defendant's motion for
    summary disposition under MCR 2.116(C)(10) did not specifically
    identify the issues it asserted raised no genuine issue of material
    fact, nor was it based on the absence of a genuine issue of material
    fact under subrule (C)(10). The plaintiff thus was not obliged under
    MCR 2.116(G)(4) to file an affidavit setting forth specific facts
    showing that there was a genuine issue for trial. She could properly

rest on the allegations in her amended complaint without further elaboration or affidavit because a motion under subrule (C)(10) had not been filed, and the defendant's unsworn brief did not constitute an amended or supplemental motion.

Summary disposition was improvidently granted because, if all the facts alleged by the plaintiff are accepted as true, as MCR 2.116(C)(10) mandates, a genuine issue remains. The circuit court erred in relying on deposition testimony because the plaintiff's account of factual events must be accepted as true. It is not the function of the circuit judge to weigh credibility. While one or two incidences of name-calling may not be actionable, insults that amount to ridicule and that cause intimidation are. Further, the plaintiff was not required to show before trial, to any degree of certainty, that her claim ultimately would be successful. Rather, the test is whether the kind of record that might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. Although worded without complete specificity, her complaint and affidavits clearly meet this threshold. Summary disposition may not be granted where the credibility of a witness or deponent is crucial.

The defendant failed to properly put in issue whether there is a genuine issue of material fact. Neither the court nor the plaintiff was on notice of the need to respond to the motion under subrule (C)(10) with regard to the hostile work environment claim.

Justice WEAVER took no part in the decision of this case.

*Bendure & Thomas* (by *Mark R. Bendure* and *Sidney A. Klingler*) for the plaintiff.

*Musilli, Baumgardner, Wagner & Parnell, P.C.* (by *Ralph Musilli*), for the defendant.

BOYLE, J. In this case, the trial court dismissed plaintiff's claim pursuant to the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, on defendant's motion for summary disposition. We hold that the trial court properly found that plaintiff had failed to sufficiently support a prima facie case of hostile work environment with documentary evidence and therefore affirm the decision of the Court of Appeals, which upheld the findings of the trial court.

FACTS

Plaintiff Elena Quinto was employed by defendant Cross and Peters Company, the maker of Better Made Potato Chips, for eighteen years. Plaintiff's first amended complaint sought judgment against Cross and Peters and John Kujawski, alleging that during four years at Cross and Peters, Kujawski, her supervisor, "demeaned and humiliated" and made "discriminatory decisions" concerning her that created a hostile work environment on the basis of her age, sex, and national origin. The complaint further alleged that, on one occasion, after a co-worker made obscene gestures, Kujawski asked her what happened "in a demeaning manner" and pushed her. Plaintiff was sixty years old and held the position of potato chip inspector when she left defendant's employ.

Plaintiff filed a two-count complaint against Cross and Peters and Kujawski.[1] In her first count, she alleged an assault and battery by Kujawski. The second count alleged that defendant created a hostile work environment by demeaning and humiliating her in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Summary disposition was requested on behalf of both Cross and Peters and Kujawski on both counts. The trial judge stated that the two dispositive questions were whether plaintiff's intentional tort claim was barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131), and whether plaintiff had established a prima facie case of age, sex, or national origin discrimination.

---

[1] Kujawski is now deceased. The only defendant before this Court is Cross and Peters.

The trial court ultimately held that no intentional tort existed to take count I, plaintiff's assault and battery claim against defendant Cross and Peters, outside the worker's compensation act because "[t]he evidence . . . does not establish that Defendant, Cross and Peters, her employer, had actual knowledge that any injury was certain to occur . . . ." Summary disposition was denied with respect to Kujawski. Regarding count II, the discrimination claim, the trial court found that, accepting plaintiff's allegations of harassment as true, there were no specific facts in plaintiff's affidavit sufficiently severe or pervasive to create a question of fact regarding Cross and Peters' creation of a hostile work environment.

The Court of Appeals affirmed the lower court in an unpublished memorandum opinion.[2] Plaintiff appealed to this Court. We granted leave, limited to the issue whether the trial court erred in granting summary disposition on plaintiff's claim of discrimination under the Civil Rights Act with regard to Cross and Peters. 448 Mich 868 (1995).

I

MCR 2.116 is modeled in part on Rule 56(e) of the Federal Rules of Civil Procedure. As pointed out by Justice Brennan in *Celotex v Catrett*, 477 US 317; 106 S Ct 2548; 91 L Ed 2d 265 (1986), the initial burden of production is on the moving party, and the moving party may satisfy the burden in one of two ways.[3]

---

[2] Issued February 17, 1994 (Docket No. 151198).

[3] Although writing in dissent, Justice Brennan did "not disagree with the Court's legal analysis." 477 US 329. On this point, his views harmonized with the majority. See 477 US 322-324.

First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. [477 US 331 (citations omitted).]

In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).

In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Neubacher v Globe Furniture Rentals*, 205 Mich App 418, 420; 522 NW2d 335 (1994). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *McCart v J Walter Thompson*, 437 Mich 109, 115; 469 NW2d 284 (1991).

If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).

Plaintiff alleged that her supervisor, John Kujawski, created a hostile work environment contrary to the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, by "continually" demeaning her in front of coemployees. Although the main thrust of defendant's initial motion was the exclusive remedy issue, defendant also briefly addressed the hostile work environment claim. Plaintiff's brief in reply responded to defendant's claim that summary disposition should be granted in respect to the discrimination claim. Defendant's responsive brief asserted that plaintiff had failed to provide specific facts to support allegations of discriminatory treatment. It referenced exhibits, attached deposition testimony[4] and other evidence that

> refutes Plaintiff's claims of alleged discrimination by Defendant Kujawski resulting in the creation of a hostile working environment. Plaintiff has come forth with no evidence to establish a genuine issue of factual dispute; therefore, Defendant's motion for Summary Disposition should be granted.

---

[4] The deposition testimony of three co-workers and two upper-level employees indicated that defendant Kujawski treated plaintiff the same as everyone else, that he was a tough but fair boss, and that, if anything, it was plaintiff who was antagonistic and hypersensitive.

The following deposition testimony from Senoia Waters, a co-worker, is relevant.

*Q.* Did [plaintiff] have any problems with Mr. Kujowski [sic]?
*A.* Not as I know of.

* * *

*Q.* Was he [Kujawski] a tough guy to get along with at all?

*A.* None of them are, no.

*Q.* Was he an aggravating guy in any way?

*A.* No.

*Q.* Would he try and aggravate people?

*A.* No.

\*          \*          \*

*Q.* Would John [Kujawski] at any time get frustrated with [plaintiff]?

*A.* Frustrated—you can get frustrated with all of us.

*Q.* When he would get frustrated, would he—how would he respond? . . . Was he somebody who yelled? . . .

*A.* No, he didn't yell. When we were making him angry and not doing what we was supposed to do, he got frustrated with all of us, but it was never at the point where he would yell at you or none of that kind of stuff, no.

Co-worker Warner Scott stated:

*Q.* Had he [Kujawski] had any problems with Mrs. Quinto up to this point that you're aware of?

*A.* I'm sure he have [sic].

*Q.* Why do you say you're sure he had?

*A.* Because she's just a bossy lady. She's bossy.

*Q.* Have you seen them argue before?

*A.* No, not—I can't say I have.

\*          \*          \*

*A.* She [plaintiff] always talk in—sometimes she talk in Italian and nobody understands her. She don't talk English that well to me and she gets mad sometimes because you don't understand that.

\*          \*          \*

*Q.* Was he [Kujawski] ever tough with Mrs. Quinto?

*A.* He was tough with all of us.

\*          \*          \*

*Q.* Was he ever sarcastic? Do you know what that means?

*A.* Yeah, I know what it means. He wasn't to me, no.

*Q.* Was he to Mrs. Quinto?

*A.* I don't believe so.

*Q.* Was he ever antagonistic with Mrs. Quinto?

*A.* I don't think so.

Q. Was he a demanding boss?
A. He's demanding.

*     *     *

Q. Did John Kujowski [sic] treat all the employees the same?
A. Yes.
Q. Was he fair?
A. Very fair.

Co-worker Rene Meservey stated:

A. . . . She [plaintiff] had been in so many arguments with so many people.
Q. . . . Was this kind of an argumentative lady or what, or was she the butt of everybody's jokes?
A. Yeah, or she would be afraid somebody was talking about her or picking on her or something like that, which especially—well, I can say, you know, a black person, because she was extremely prejudiced.

*     *     *

Q. . . . [S]he had difficulty speaking English from what I understand.
A. Yes.
Q. Would anybody make fun of her or taunt her or anything like that?
A. No, but I know she was always worried about that. . . . It was just stuck in her head that people were talking about her. Why, I don't know. That's the type of woman she was, I guess.

*     *     *

Q. She's an older Italian woman who doesn't speak English so good. Did that cause the same kind of bias in other people that you witnessed where people would kind of make fun of her?
A. Toward Elaina [sic], no, no. I mean, I will agree we've got some rotten people there, but nobody is going to come up to somebody and cut them down because of their race. Most people hold it to themselves.

George Orris, the plant manager, stated:

Q. She's [plaintiff's] a fairly difficult lady to understand, isn't she, when she's trying to communicate?
A. When she's excited.

Whatever the procedural peculiarities of the prior pleading and responses, it is clear that at the time of hearing on November 1, 1991, the parties knew that the civil rights claim was in issue. After the hearing and before the decision, plaintiff filed a reply brief and an affidavit in support, disputing the credibility of the deposition testimony regarding whether Ms. Quinto had been pushed by her supervisor. The affidavit[5] also contained allegations regarding plaintiff's discrimination claim, stating in pertinent part:

Q. When she's not excited, is she difficult to understand?
A. I've worked with her so many years, I could understand her very good.

\*    \*    \*

A. She [plaintiff] was always worrying about what anybody was talking about . . . and John [Kujawski] told her . . . don't pay. any attention to what they're talking about.

\*    \*    \*

Q. Did she [plaintiff] file any [union] grievances?
A. No.

\*    \*    \*

Q. Had Mr. Kujowski [sic] been disciplined in any way for two or three years prior to Mrs. Quinto leaving the company?
A. Disciplined, no.
Q. Had grievances been filed against him by any members of the union?
A. Not that I know of.

Robert Marracino, the general manager, stated:

A. Well, her [plaintiff's] biggest problem was that she always thought someone was talking about her. She had a difficult time with the English language and when the people were talking a little distance from her, she always got the impression that they were talking about her because of her hang-up on the English language.

[5] Plaintiff also relies on a second affidavit, filed after the trial court granted defendant's motion for summary disposition. That affidavit states:

9. . . . . [M]y supervisor, John Kujawski, had continually harassed me by demeaning and humiliating me in front of fellow employees.

10. His conduct included comments regarding my age, my sex, my national origin and my ability to speak English.

11. That all of these incidents took place while I was at work.

12. That I reported these incidents to my superiors at work.

Thus, the narrow issue before us is whether the affidavit raised a genuine issue of material fact sufficient to permit a reasonable jury to find a hostile work environment.

The trial court concluded that plaintiff failed to present specific facts to support a prima facie case of discrimination. In particular, it found that plaintiff's allegations, taken as true, did not "rise to the level of

---

I Elena Quinto state for the record, that during the last two years of employment with Better Made Potato Chips, while under the supervision of John, was subjected to various abuse. Listed below are some of the comments that were said to me during that time.

- Dumb Dago, your [sic] coo-coo.
- Incompetent, don't understand anything
- Would not allow her to go use the rest room
- Old Lady, granny
- stupid
- Threw boxes at her.
- He stated, He was watching my every move.
- Would not allow others help her when the machine would malfunction.

This second affidavit was not before the trial court. The affidavit was filed with a motion for rehearing, *after* the trial court granted defendant's dispositive motion. In ruling on a motion for summary disposition, a court considers the evidence then available to it. *Apfelblat v Nat'l Bank Wyandotte-Taylor*, 158 Mich App 258, 263; 404 NW2d 725 (1987). Accordingly, in ruling on the propriety of the trial court's grant of defendant's motion for summary disposition, we do not consider the second affidavit.

severity necessary to sustain an actionable claim of hostile environment discrimination" against Cross and Peters. The Court of Appeals agreed.

A

We have not had occasion to address whether a claim of discrimination based on hostile environment, when the allegations of discrimination involve conduct or communication that is not "of a sexual nature," is encompassed by the Civil Rights Act. MCL 37.2103(i)(iii); MSA 3.548(103)(i)(iii); *Radtke v Everett*, 442 Mich 368; 501 NW2d 155 (1993). Nor do we decide that issue today.[6] Rather, we assume without deciding that plaintiff is within the class protected and that a hostile environment claim may be maintained on conduct involving a plaintiff's gender, age, or national origin.[7]

In *Radtke, supra* at 382-383, we set forth the five elements necessary to establish a prima facie case of discrimination based on hostile work environment:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of [her protected status]; (3) the employee was subjected to unwelcome . . . conduct or communication [involving her protected status]; (4) the unwelcome . . . conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

---

[6] We recognize that federal courts have held that harassing behavior based on ethnicity and age is violative of title VII.

[7] But see *Koester v City of Novi*, 213 Mich App 653, 669-670; 540 NW2d 765 (1995), holding that gender-biased comments to a female employee about pregnancy, career choice, and child rearing are not communications "of a sexual nature" that create a hostile work environment.

(5) respondeat superior. MCL 37.2103(h);   37.2202(1)(a); MSA 3.548(103)(h);  3.548(202)(1)(a).

Our review centers on the third and fourth elements—whether Kujawski's actions involved conduct or communication involving her protected status, and whether the conduct toward plaintiff was intended to, or in fact did, substantially interfere with her employment or created an intimidating, hostile, or offensive work environment. Under *Radtke*, whether a hostile work environment was created by the unwelcome conduct "shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." 442 Mich 394. Consequently, to survive summary disposition, plaintiff had to present documentary evidence to the trial court that a genuine issue existed regarding whether a reasonable person would find that, in the totality of circumstances, Kujawski's comments to plaintiff were sufficiently severe or pervasive to create a hostile work environment.[8]

---

[8] This inquiry is consistent with the purpose of the Civil Rights Act. *Radtke* at 387 states:

> As noted, the purpose of the act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace. The reasonableness inquiry (i.e., objectively examining the totality of the circumstances) in a hostile work environment action, is simply a method of objectively determining whether a hostile work environment existed. The alternative would be to accept all plaintiffs' subjective evaluations of conduct, thereby imposing upon employers liability for behavior that, for idiosyncratic reasons, is offensive to an employee.

B

There is no serious claim that plaintiff was not on notice of the need to respond to the (C)(10) motion with regard to count II or that the motion was prematurely filed or prematurely granted. Despite plaintiff's burden to respond with "specific facts showing that there is a genuine issue for trial," MCR 2.116(G)(4), plaintiff responded with conclusory allegations.

At the stage where all that was before the court with respect to count II was the deposition testimony and the affidavit of the plaintiff, the only evidence of record supporting the plaintiff's claim of discrimination by Cross and Peters was inadequate under this standard. Had plaintiff testified in conclusory form at trial that her supervisor's conduct was "continually" demeaning and humiliating regarding her age, sex, national origin, and ability to speak English, a reasonable jury could not have found from a preponderance of the evidence that the comments were of a type, severity, or duration to have created an objectively hostile work environment.[9]

Plaintiff's affidavit disclosed no specific instances of ethnic, sexist, or "ageist" remarks hostile to a protected class from which an inference of a hostile work environment could be drawn. It did not describe

---

[9] As Justice Sandra Day O'Connor observed in the title VII context for the Court in *Harris v Forklift Systems, Inc*, 510 US 17, 22-23; 114 S Ct 367; 126 L Ed 2d 295 (1993):

This is not, and by its nature cannot be, a mathematically precise test. . . . But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

with particularity when, where, or how plaintiff was harassed. Although, as the trial judge recognized, a single act by an employer may so poison the environment as to constitute discrimination, it does not follow that allegations of a push without evidence of conduct or communication violative of the act presents a claim to submit to a jury. Plaintiff's affidavit conclusorily states that Kujawski subjected her to harassing comments regarding her age, sex, national origin, and ability to speak English. As a consequence, the trial court properly found that plaintiff did not establish the existence of a genuine issue of material fact on an essential element of her claim.[10]

In conclusion, we hold that once defendant supported its motion for summary disposition under MCR 2.116(C)(10) with documentary evidence, plaintiff, as the opposing party, had the duty to rebut with documentary evidence defendant's contention that no genuine issue of material fact existed. Plaintiff's affidavit did not satisfy her burden as the opposing party; rather, it constituted mere conclusory allegations and was devoid of detail that would permit the conclusion

---

[10] Federal courts have granted summary judgment to defendants in discrimination cases when plaintiffs have submitted similarly conclusory affidavits. See, e.g., *Johnson v United Airlines, Inc*, 680 F Supp 1425, 1431 (D Hawaii, 1987) (an affidavit that stated, "United Airlines and Jack Wilcox have both discriminated against me based upon my race and my age" was insufficient to create a genuine issue of material fact); *Farrell v Potomac Electric Power Co*, 616 F Supp 995, 1000 (D DC, 1985) (an affidavit stating that the defendant should know that "a caucasian male received benefits under the contract for alleged misconduct similar to that for which [I] was discriminated" was not specific enough to prevent the entry of summary judgment for the defendant); *De Loraine v MEBA Pension Trust*, 355 F Supp 89, 92 (SD NY, 1973), aff'd 499 F2d 49 (CA 2, 1974) (an affidavit alleging, "I believe the regulation amendment was proposed by the union for the sole purpose of discriminating against older workers" was insufficient to withstand the defendant's motion for summary judgment).

that there was such conduct or communication of a type or severity that a reasonable person could find that a hostile work environment existed. The Court of Appeals properly affirmed the trial court's grant of summary disposition in favor of defendant.

BRICKLEY, C.J., and CAVANAGH, RILEY, and MALLETT, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). Defendant Cross and Peters Company's motion for summary disposition under MCR 2.116(C)(10) did not "specifically identify the issues as to which" it asserted there was no genuine issue of material fact,[1] and, indeed, the motion was not based on the absence of a genuine issue of material fact under subrule (C)(10). Plaintiff Elena Quinto thus was not obliged under MCR 2.116(G)(4) to file an affidavit setting forth specific facts showing there was a genuine issue for trial. Quinto could properly rest on the allegations in her amended complaint without further elaboration or affidavit because a (C)(10) motion had not been filed, and defendant's unsworn *brief* did not constitute an amended or supplemental *motion*.

Today's decision, ruling for Cross and Peters under (C)(10), encourages sloppy practice by defendants,

---

[1] MCR 2.116(G)(4) provides:

> A *motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When* a motion under subrule (C)(10) is made and supported *as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [Emphasis added.]

and by the circuit court in ruling on (C)(10) motions, and denied Quinto an opportunity to be heard.

I

Quinto, an elderly woman of Italian descent who speaks only broken English, worked for eighteen years for Cross and Peters, the last four as a potato chip inspector.[2] She alleges that during those four years, she was demeaned and humiliated by her supervisor John Kujawski. Quinto alleges that Kujawski made a variety of offensive remarks, mostly about her age, national origin, sex, and ability to speak English.[3]

The culmination of Quinto's problems at Cross and Peters occurred on August 5, 1988, when, Quinto alleges, she and a co-worker argued, and the co-worker uttered an obscenity and exposed her buttocks to Quinto. Upset, Quinto reported the incident to senior management. Soon after, Kujawski came over to Quinto's work station to ask what was going on. Quinto alleges that as Kujawski spoke, he pushed her, causing her to fall and injure herself. This assertion is disputed by other co-workers who said that Quinto was not pushed, but feigned a faint when touched. These witnesses stated that Kujawski actually caught Quinto as she fell.

---

[2] Cross and Peters makes Better Made Potato Chips.

[3] Quinto alleged in an affidavit that accompanied her motion for reconsideration that Kujawski called her a "dumb Dago," an "old lady," and "granny." She stated that he also told her that she was "coo-coo," "stupid," and "incompetent" apparently because she was unable to understand some English at times.

Quinto also asserts that Kujawski threw boxes at her, would not allow her to go to the restroom, and kept others from helping her when her machine malfunctioned.

The day of this incident was Quinto's last day at work. Quinto filed worker's compensation and social security benefits claims. These were followed by a short, voluntary stay, from December 12, 1988 until January 16, 1989, in the Psychiatric Center of Michigan where she was diagnosed as suffering from "atypical depression with hypochondriasis and somatization disorder." Quinto claims that this stay was necessitated by her traumatic experiences at work.

In August, 1990, Quinto filed this action against Cross and Peters and Kujawski, seeking damages for her physical injuries resulting from the alleged battery, as well as for psychological injuries caused by Cross and Peters' discriminatory treatment respecting age, sex, and national origin. Kujawski subsequently died, and Quinto dismissed the action against him.

Cross and Peters moved for summary disposition of both the assault and battery and discrimination claims. The motion was granted, and the Court of Appeals affirmed. This Court granted leave to appeal limited to whether summary disposition was proper with regard to Quinto's Civil Rights Act discrimination claim.

II

This Court has recognized civil rights causes of action for two types of discrimination. A "disparate treatment" claim alleges that the victim was denied some privilege of employment given to others because of a particular trait (skin color, gender, or ethnic background). *Betty v Brooks & Perkins*, 446 Mich 270, 281; 521 NW2d 518 (1994). The second claim, the one alleged by Quinto, may be maintained when the employer creates a "hostile work environ-

ment." *Radtke v Everett*, 442 Mich 368; 501 NW2d 155 (1993).

Quinto alleged in her complaint and subsequent affidavit a hostile work environment on the basis of two occurrences. First, that Kujawski, motivated by discriminatory animus, pushed her down, causing her to suffer emotional and physical injuries. Second, Quinto claims that he "demeaned and humiliated" her during her employment at Cross and Peters with repeated comments regarding her age, sex, and national origin.

A

Cross and Peters took what can be charitably described as an unorthodox path to the ultimate summary disposition on the merits under subrule (C)(10). Cross and Peters alleged that Quinto could not recover on the civil rights claim because of the exclusive remedy provision of the Worker's Disability Compensation Act. Cross and Peters made *no mention* of the merits or the factual sufficiency of Quinto's complaint.

After Quinto responded to Cross and Peters' motion with a brief in opposition, Cross and Peters filed, on October 8, 1991, three weeks before oral argument in the circuit court, a reply brief to Quinto's response. This second brief went into greater depth than Cross and Peters' first brief, and adverted to the factual allegations of discrimination made in Quinto's complaint. While this brief did not explicitly so state, Cross and Peters asserted, during oral argument in this Court, that this unsworn reply brief served as a new motion for summary disposition, Cross and Peters having withdrawn its original motion. A few

days before oral argument, on October 29, 1991, Quinto filed a second response, which focused on the exclusive remedy and intentional tort issues.

Oral argument on the summary disposition motion was then held two days later on November 1, 1991. The hearing dealt almost exclusively with the issue originally raised by Cross and Peters, whether, because of the exclusive remedy provision of the worker's compensation act, the circuit court had jurisdiction to hear Quinto's claims. The factual context (pushing/fainting) was adverted to but not discussed, except superficially; there was *no discussion* of Quinto's claim of offensive remarks concerning sex, age, and national origin.

Nevertheless, although Cross and Peters' motion for summary disposition did not address the sufficiency of Quinto's factual allegations, and the hearing focused on the exclusive remedy and intentional tort issues, the circuit court concluded in a written opinion that summary disposition under subrule (C)(10) was proper *on the merits* of the age, sex, and national origin claims.

The circuit court's opinion finding Quinto's allegations insufficient for want of factual support ignored that MCR 2.116(G)(4) requires Cross and Peters to file, before summary disposition may be granted, a motion "specifically identify[ing] the issues as to which the moving party believes there is no genuine issue as to any material fact." Additionally, MCR 2.116(G)(3) requires Cross and Peters' motion to be supported by "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted . . . ." Cross and Peters failed to satisfy either of these requirements.

B

Putting aside the procedural irregularities in this case, summary disposition was improvidently granted because if one accepts all the facts alleged by Quinto as true, as MCR 2.116(C)(10) mandates, a genuine issue remains.

The depositions focused almost exclusively on Quinto's allegation that her supervisor pushed her. There was no focus on Quinto's allegation that she was verbally harassed.

The circuit court erred in relying on the deposition testimony concerning the pushing/fainting incident. Quinto's account of factual events must be accepted as true. It is not the function of the circuit judge to weigh credibility.[4]

The United States Supreme Court stated in *Meritor Savings Bank, FSB v Vinson*, 477 US 57, 65; 106 S Ct 2399; 91 L Ed 2d 49 (1986), that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."[5] Thus it appears that while, as the circuit court noted, one or two incidences of name-calling may not be actionable, insults that amount to ridicule and that cause intimidation are. Because in this case, without the benefit of trial testimony, it is impossible to determine whether Quinto's allegations fall into the

---

[4] See *Beauchamp v Dow Chemical Co*, 427 Mich 1, 26; 398 NW2d 882 (1986); *Boutros v Canton Regional Transit Authority*, 997 F2d 198 (CA 6, 1993).

[5] Although title VII is not controlling in this case, federal precedent is considered persuasive in cases brought under the Civil Rights Act. See *Radtke v Everett, supra*, pp 381-382; *Clark v Uniroyal Corp*, 119 Mich App 820, 824; 327 NW2d 372 (1982).

first or second category, summary disposition was inappropriate.

This Court, in *Radtke v Everett, supra* at 394, stated that "whether a hostile work environment exist[s] shall be determined by whether a reasonable person, *in the totality of circumstances*, would have perceived the conduct at issue as substantially interfering with [Quinto's] employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." (Emphasis added.)[6] Because of the procedural deficiencies, it is difficult to grasp some of the circumstances involved, much less the *totality* of them.

Quinto was not required to show before trial to any degree of certainty that her claim would ultimately be successful. Rather, "the test is 'whether the kind of record *which might be developed*, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ.'" *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994) (emphasis added). Although worded without complete specificity, her complaint and affidavits clearly meet this threshold.

Summary disposition may not be granted "where the credibility of a witness or deponent is crucial." *Crossley v Allstate Ins Co*, 139 Mich App 464, 468; 362

---

[6] In *Harris v Forklift Systems, Inc*, 510 US 17, 23; 114 S Ct 367; 126 L Ed 2d 295 (1993), the Court stated:

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

NW2d 760 (1984), citing *Arber v Stahlin*, 382 Mich 300; 170 NW2d 45 (1969), and *Brown v Pointer*, 390 Mich 346; 212 NW2d 201 (1973).

### III

While a workplace environment characterized by sexual harassment by a supervisor of an employee is clearly intolerable, federal courts have also recognized that harassing behavior is similarly unacceptable when based on ethnicity,[7] age,[8] and gender.[9] Because this is consistent with the goals of the Civil Rights Act, this Court should adopt the approach of these federal cases.

### IV

I turn to a consideration of the majority opinion.

In affirming the summary disposition of Quinto's hostile work environment claim on the basis that she failed to show that there is a genuine issue of material fact, the majority ignores Cross and Peters' failure to properly put in issue whether there is a genuine issue of material fact.[10]

### A

Cross and Peters' motion for summary disposition and brief in support argued that Quinto's "sole and exclusive remedy in this matter is recourse to the

---

[7] See *Boutros v Canton Regional Transit Authority*, n 4 *supra*, reversing a directed verdict against an employee where the employee alleged a hostile work environment based on national origin discrimination as a result of his co-workers' repeated derogatory name-calling.

[8] See *Elias v Sitomer*, 1992 US Dist LEXIS 18627 at *14 (SD NY).

[9] See *Gross v Burggraf Construction Co*, 53 F3d 1531, 1539 (CA 10, 1995), recognizing that a hostile work environment cause of action will lie when an employee is subjected to extreme, gender-based name-calling.

[10] MCR 2.116(C)(10).

Department of Labor by way of a worker's compensation claim." In neither the motion nor the brief did Cross and Peters challenge the pleading or factual sufficiency of Quinto's hostile work environment claim.

Indeed, the brief in support acknowledged that "the fact of the allegations [of a hostile working environment and of supervisor Kujawski's pushing Quinto from the rear causing her to fall] and the denial are *irrelevant* in light of this Motion." (Emphasis added.)

B

The majority asserts:

> Although the *main* thrust of defendant's *initial* motion was the exclusive remedy issue, defendant also *briefly addressed* the hostile work environment claim.[11] [Emphasis added.]

There are three inaccuracies in the foregoing statement:

- There was not a "main" and a secondary or lesser thrust; the *only* thrust of defendants' motion was the exclusive remedy issue;
- There was not an "initial" motion and a subsequent motion; there was *only* one motion;
- The motion did not briefly or otherwise *address* the hostile work environment claim;[12] it addressed *only* the exclusive remedy issue.

---

[11] *Ante*, p 363.

[12] The motion for summary disposition, except for the opening and closing paragraphs, in its entirety reads as follows:

1. That on or about August 2, 1990, the Plaintiff herein, Elaina [sic] Quinto, did bring this action before the Wayne County Circuit Court, alleging in Count I a battery having been perpetrated against

C

The majority states that Cross and Peters' reply brief, filed October 8, 1991—three weeks before oral argument, over eight months after Quinto's response and brief had been filed—"asserted that plaintiff had failed to provide specific facts to support allegations of discriminatory treatment. It referenced exhibits, attached deposition testimony and other evidence that [Cross and Peters contends] 'refutes Plaintiff's claims of alleged discrimination by Defendant Kujawski resulting in the creation of a hostile working environment. Plaintiff has come forth with no evidence to establish a genuine issue of factual dispute; therefore, Defendant's motion for Summary Disposition should be granted.' "[13]

The foregoing assertions in Cross and Peters' reply brief are what its counsel, during oral argument in this Court, characterized as a new motion for summary disposition, and then represented to this Court that the "original" motion for summary disposition had been withdrawn.

---

by Defendant John Greoski [sic], which was the proximate cause of damages described in the Complaint (See paragraphs 15 and 12 of Plaintiff's Complaint).

2. In Count II, the Plaintiff herein did allege injuries as set forth in paragraph 12 of her Complaint as having been caused by a hostile work environment created by the Defendants.

3. That in fact on or about November 2, 1988, the Plaintiff herein, Elaina Quinto, did cause to be filed with the Michigan Department of Labor a worker's compensation claim alleging the same incident and claiming the same injury.

4. That, to the best of the knowledge of your undersigned, said worker's compensation claim is still pending.

5. That in fact the Plaintiff's sole and exclusive remedy in this matter is recourse to the Department of Labor by way of a worker's compensation claim.

[13] *Ante*, pp 363-366.

No affidavit of either Cross and Peters' counsel, Kujawski, or any officer of Cross and Peters was attached to this reply brief, claimed to have constituted a new motion for summary disposition.

The "attached deposition testimony" focused on the pushing/fainting incident and did not otherwise concern Quinto's age, sex, and national origin, hostile work environment claim. This is understandable because the depositions were taken by Quinto's lawyer, *not* Cross and Peters' lawyer.

The questions posed by Quinto's lawyer appear to have been designed to provide him with background information about Quinto's last day of work and the potato chip factory and its management system, layout, and employees. The questions focused predominantly on either the pushing/fainting incident or the general work conditions and personnel dynamics in the plant.

Senoia Waters, the co-worker on the potato chip inspection line with Quinto who argued with her, touching off the pushing/fainting incident, testified in response to questions about the events leading up to and after the incident. She was asked a few general questions about how supervisor Kujawski treated employees, and whether he was easy to get along with, but nothing about discriminatory name-calling.

Warner Scott, another co-worker was asked questions similar to those asked Waters concerning what happened on Quinto's last day of work. Like Waters, Scott was asked whether Kujawski was "tough" or "antagonistic" with Quinto.

Rene Meservey, a machine repairman who had also observed the incident, was the only witness asked directly if there was any prejudice at work. He stated

that only a couple of persons at the company would "cut [someone] down because of their race." He was not asked who those persons were, nor did he volunteer this information.

Plant manager George Orris testified that he did not observe the incident. He was not asked any questions about Kujawski's general demeanor or specific conduct toward Quinto, other than how Kujawski responded when Quinto "fainted." He said, however, that Kujawski had had "problems" with Quinto in the past.

Robert Marracino testified briefly, and was not asked any questions about Quinto's and Kujawski's relationship.

D

The majority acknowledges the "procedural peculiarities" of Cross and Peters' so-called new motion for summary disposition,[14] but nevertheless concludes that Quinto was "on notice of the need to respond to the (C)(10) motion" with regard to her hostile work environment claim, and even asserts that the "new" motion, which was never filed, was not "prematurely filed."[15]

---

[14] The majority states:

> Whatever the procedural peculiarities of the prior pleading and responses, it is clear that at the time of hearing on November 1, 1991, the parties knew that the civil rights claim was in issue. [*Ante*, p 366.]

[15] The majority asserts:

> There is no serious claim that plaintiff was not on notice of the need to respond to the (C)(10) motion with regard to count II or that the motion was prematurely filed or prematurely granted. Despite plaintiff's burden to respond with "specific facts showing

Manifestly, nothing in the deposition testimony concerning the pushing/fainting incident or in Cross and Peters' unsworn reply brief, inaccurately characterized as a "new motion" for summary disposition, put Quinto on notice that she was obliged to come forward with evidence in support of her allegation of a hostile work environment based on remarks concerning her age, national origin, sex, and ability to speak English.

Surely, the moving party, Cross and Peters, cannot demand that the other party, Quinto, come forward with evidence absent the moving party first offering some (any) evidence negating Quinto's claims concerning remarks about her age, national origin, sex, and ability to speak English. There is *nothing* in the depositions regarding Quinto's claims in that regard.

E

At oral argument in the circuit court on November 1, 1991, Cross and Peters' counsel argued first that this case is controlled by the exclusive remedy provision.[16] He said there was no question of fact, depositions had been taken, and "all of the eye witnesses said exactly the same thing"—the supervisor "did not push her." Cross and Peters' lawyer argued that there is "no question of fact remaining" because "[e]verybody said exactly the same thing . . . ." He concluded with the observation that there was no actionable intentional tort because to recover for

___

that there is a genuine issue for trial," MCR 2.116(G)(4), plaintiff responded with conclusory allegations. [*Ante*, p 370.]

[16] He argued that the plaintiff "[a]t the same time" of filing her circuit court action had filed worker's compensation claims "alleging exactly the same incident" and "exactly the same injuries."

intentional tort there has to be a "specific intent that the injury alleged occurred; that just isn't here."

He then turned for the first time to speak of the "second matter that's addressed in both of the briefs," the civil-rights-type action, and argued that "all through the discovery there were no indications at all that this woman was discriminated against." The lawyer argued in support *only* that all the employees were women, that seventy percent were over the age of forty, and that the owners of the defendant are Italian.[17]

---

[17] The gender, age, and ethnic makeup of the persons involved are relevant in a disparate treatment claim, but largely irrelevant in a case where, as here, hostile work environment is alleged.

Cross and Peters' counsel argued:

From a factual standpoint the allegation is made that the plaintiff was discriminated against as a result of her sex, her national origin, her age.

Again, deposition testimony was taken and from the deposition testimony it's quite clear that we cannot have sexual discrimination because all of the employees that were supervised by this supervisor were women.

So, there were no men that could have been treated differently from this women [sic].

Secondly, approximately seventy percent of the employees were over the age of forty years old.

So, she was clearly not discriminated against as a result of her age.

And third, that she was discriminated against because of her national origin. I would only indicate, first of all, to the Court that Cross and Peters stands for Cross Moceri and Peter Cipriano, who are the two Italian gentlemen that founded this country (sic); their children are still in charge of this country (sic). This is an Italian family business.

There is no—all through the discovery there were no indications at all that this woman was discriminated against. As a matter of fact, just the opposite was testified to by all of the witnesses.

The other employees testified that this particular supervisor— while not a supervisor for four years as is alleged in the complaint but a supervisor for only one year—was fair, treated everybody exactly the same, was not a hostile person, did not aggravate any-

The depositions had, as previously observed, focused almost entirely on the pushing/fainting incident on the last day of Quinto's employment.

Quinto was not deposed. This is not a case in which the plaintiff, Quinto, made concessions on deposition that arguably permit framing an issue of law on the basis of Quinto's admissions.

F

The circuit court, as well as Quinto, was not on notice that this case was about to be decided on the basis of the merits of the age, sex, and national origin allegations. The court did not have a clue that the real issue in the case—the issue regarding which this Court granted leave to appeal—was whether summary disposition should be granted with respect to Quinto's claim that she had been subjected to a hostile work environment by remarks concerning sex, age, and national origin.

The court said that Cross and Peters' lawyer was arguing that there was "*no assault and battery,* based upon the proofs or the discovery." (Emphasis added.) Quinto's lawyer responded that Cross and Peters' lawyer "did not deem it important to take the deposition testimony of [Quinto] who will, in fact, testify that she was pushed." The court responded "Oh, I'm sure she will. You said it in your complaint and I am sure she will testify to that. What he is saying is that nobody else will. Is that correct?" Quinto's lawyer

body; and that, in fact, in this particular incident was attempting to calm Mrs. Quinto down.

The reason given by all of the employees for her hysteria was that it had been a hot day and that's just the way it is.

So, the discovery shows that there was no discrimination.

responded that that created a disputed question of fact.[18]

The court then responded, irrelevantly, "Okay, and when you redeem your [worker's compensation] case . . . are you getting it for the damages done to her when she was pushed?" Then from the court, "What you really have to prove is that there was an intentional tort, right?" And then the court said that any damages for intentional tort that are obtained in compensation cannot be duplicated in this court. Quinto's lawyer agreed, and the judge said they were all agreed and inquired when the worker's compensation case would be concluded.

After all these irrelevancies were concluded, the court talked about scheduling and, again, redemption of the worker's compensation claim. The court said that it did not think Quinto could keep Cross and Peters in the case even if she might be able to keep Kujawski. The court said that it planned on issuing a written opinion. Quinto's lawyer inquired whether the court was interested in additional briefing on the issue of keeping Cross and Peters in, to which the judge responded affirmatively.

Cross and Peters' lawyer asked the court whether it wanted the full transcripts of the depositions to which the judge said, "*I don't think so.*" "Only the part that deals with *this,*" adding what she meant by this: "If you've got anything to indicate that there was an *intentional tort, you produce it, okay?*" (Emphasis added.)

It is clear that the judge was thinking about dismissing the case because there was no evidence of intentional tort. At no point did she discuss harass-

---

[18] See pp 378-379, the text immediately preceding part III.

ment or Quinto's civil rights claim. She did not think that Quinto was going to be able to show intentional tort, and that she should not be allowed to recover double damages by redeeming the worker's compensation claim and maintaining a circuit court action for the same loss.

I conclude that neither the circuit court nor Quinto were "on notice of the need to respond to the (C)(10) motion with regard to"[19] the age, sex, national origin, hostile work environment claim.

I recognize that the judge wrote an opinion dismissing the hostile work environment claim. That portion of the opinion is not based on anything set forth in Cross and Peters' briefs or argued orally at the hearing. The court simply decided to dismiss the case, and did so, and probably was unaware of the grossly inadequate procedural posture of the case.

G

The majority references statements in Quinto's briefs, and contends that they indicate that she was on notice of the need to put forth evidence concerning her hostile work environment claim.

Quinto filed a short brief after oral argument that focused *entirely* on the pushing/fainting incident and the testimony of the witnesses in that regard. The brief did *not* otherwise advert to or argue the hostile work environment claim. Read in the context of that brief, Quinto's affidavit attached to the brief was *not* submitted in support of the hostile work environment claim, but rather the assault and battery claim.[20]

---

[19] *Ante*, p 370.

[20] Her affidavit, in relevant part, reads:

   3. I had been employed by Defendant, Cross & Peters, for approximately eighteen (18) years.

   4. My last date of employment was August 5, 1988.

V

The Court of Appeals should be reversed, and the case remanded for trial.

WEAVER, J., took no part in the decision of this case.

---

5. That on that date, my supervisor, John Kujawski, was the assistant plant manager.

6. That on that date, a co-worker began to argue with me.

7. That my supervisor, John Kujawski, approached me from the rear and in a demeaning manner asked me what had happened.

8. My supervisor, John Kujawski, intentionally pushed me, causing me to fall.

9. Prior to this incident my supervisor, John Kujawski, had continually harassed me by demeaning and humiliating me in front of fellow employees.

10. His conduct included comments regarding my age, my sex, my national origin and my ability to speak English.

11. That all of these incidents took place while I was at work.

12. That I reported these incidents to my superiors at work.

13. As a result of Mr. Kujawski's conduct and actions, as my supervisor, I have suffered emotional and psychological injury which resulted in my being hospitalized at the Psychiatric Center of Michigan Hospital.