# STATE OF MICHIGAN

# COURT OF APPEALS

MIDWEST MEMORIAL GROUP LLC, ACACIA PARK CEMETERY, ALBION MEMORY GARDENS, CADILLAC MEMORIAL GARDENS EAST, CADILLAC MEMORIAL GARDENS WEST, CHAPEL GARDENS, EASTLAWN MEMORIAL GARDENS AND MAUSOLEUM, ELM LAWN CEMETERY, FLORAL VIEW MEMORIAL GARDENS, FOREST LAWN MEMORIAL GARDENS, GARDEN OF REST MEMORIAL PARK, GRACELAND MEMORIAL PARK AND MAUSOLEUM, GRANDLAWN CEMETERY AND MAUSOLEUM, HILLCREST MEMORIAL PARK, KENT MEMORIAL GARDENS, MIDLAND MEMORIAL GARDENS, MOUNT HOPE MEMORIAL GARDENS, NORTHLAND CHAPEL GARDENS, OAKLAND HILLS MEMORIAL GARDENS, OAKLAWN CHAPEL GARDENS, OAKVIEW CEMETERY, OAKWOOD MEMORIAL MAUSOLEUM, RESTLAWN MEMORIAL GARDENS, ROSELAND PARK CEMETERY, ROSELAWN MEMORIAL GARDENS, UNITED MEMORIAL GARDENS, WASHTENONG MEMORIAL PARK AND MAUSOLEUM, WOODLAWN CEMETERY, and WOODMERE CEMETERY,

UNPUBLISHED
September 17, 2015

      Plaintiffs-Appellants/Cross-
      Appellees,

v

No. 322338
Ingham Circuit Court
LC No. 10-000025-CR

CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH BARNEY, CURRIE KENDALL, PETER JENSEN, CLAYTON SMART, KIMBERLY SINGER, MARK SINGER, MKS FAMILY LLC, and INTERNATIONAL FUND SERVICES,

      Defendants,

-1-

and

PLANTE & MORAN PLLC,

> Defendant-Appellee/Cross-
> Appellant.

---

Before:  BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

O'CONNELL, J. (*concurring in part and dissenting in part*).

Plaintiffs' claims present a Gordian knot of interrelated doctrines, rules, and exceptions that they weave into a case of professional accounting malpractice against defendant Plante & Moran, PLLC (Plante Moran).  The majority valiantly attempts to unravel the knot; I prefer to slice to the center.  I concur with the majority's conclusions regarding the scope of engagement, assignment of the claims,[1] and causation, but dissent from its analysis of the wrongful conduct rule.  Therefore, I would hold that the trial court's error in granting summary disposition was harmless, and I would affirm.

## I.  THE WRONGFUL CONDUCT RULE

"[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed."  *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998).  Plaintiffs thus stand in the shoes of Summerfield in this action and have no greater rights against Plante Moran than Summerfield would have had.

As the majority states, "no man shall take advantage of his own wrong."  *Garwols v Bankers Trust Co*, 251 Mich 420, 426; 232 NW 239 (1930) (quotation marks and citation omitted).  Under the wrongful conduct rule, a plaintiff may not take advantage of his or her wrongful conduct to pursue a claim against a defendant.  *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995).  And if both parties acted wrongfully, "the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them."  *Id.* (quotation marks and citation omitted).

Because a corporation can only act through its employees, the knowledge of the employees is imputed to the corporation itself.  *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213; 476 NW2d 392 (1991).  When a plaintiff corporation's claims are based on the wrongful conduct of corporate officers, the wrongful conduct is imputed to the corporation itself

---

[1] For the purposes of the assignment of the claim, I note that the assignment assigned not only the cemetery properties themselves, but also assigned "[a]ll of the . . . *Seller's* . . . existing, pending and future . . . causes of action . . . against all third parties relating to the . . . Michigan Cemeteries . . . ."  (Emphasis added.)

and may bar the corporation's claims. *MCA Fin Corp v Grant Thornton, LLP*, 263 Mich App 152, 157; 687 NW2d 850 (2004).

In this case, Smart committed fraud while he was an officer of Summerfield.[2] It is undisputed that Smart's conduct was wrongful and criminal. Under the general rule, Smart's wrongful conduct may be imputed to Summerfield.

But the plaintiffs contend that the wrongful conduct rule does not bar their claims because Smart's actions did not benefit Summerfield. Generally, "the fraudulent acts of a corporate officer may be imputed to a corporation where those acts (1) are in the course of employment, and (2) are for the benefit of the corporation." *Id*. at 163. This is the adverse interest exception. *Id*. at 164. Under this exception, when the agent's actions are adverse to the interests of the corporation and the agent acts solely in his or her own interests, the wrongful conduct rule will not apply. *Id*. By plaintiffs' logic, Smart's actions may not be imputed to Summerfield because Summerfield did not benefit from Smart's fraud.

Of course, even exceptions to rules have exceptions. "The sole actor rule is an exception to the adverse interest exception . . . ." *Id*. at 169. The sole actor rule applies when "the wrongdoer is, in essence, the corporation (the "sole actor")." *Id*. An example of a situation in which the sole actor rule applies is when "a sole shareholder loots the corporation of its assets[.]" *Id*.

Here, Smart was the sole shareholder of Summerfield. Under those auspices, Smart looted Summerfield of its assets. The sole actor rule is precisely on point. However, plaintiffs attempt to squeak past the sole actor rule by relying on the "innocent decision maker exception," an exception to the exception to the exception to the wrongful conduct rule.

The innocent decision maker exception has never been applied in Michigan, but this Court briefly referred to it in *MCA Fin*. The Court in *MCA Fin* cited *In re Sharp Int'l Corp*, 278 BR 28 (Bankr ED NY, 2002) for the proposition that fraud would not be imputed to the corporation "where there exists at least one innocent decision maker who, if he had been alerted to the fraud, could have stopped it." *MCA Fin*, 263 Mich App at 169. In other words, if an innocent decision maker could have stopped the sole actor from committing fraud, the actor's actions cannot be imputed to the corporation, and the wrongful conduct rule will not apply.

Even if this exception was applicable, it only applies in cases where the innocent decision maker *makes decisions as part of the corporation*. In *Sharp*, the "innocent decision maker" was a 13% shareholder who regularly visited the offices, consulted with the corporation, and received and reviewed financial statements. *Sharp*, 278 BR at 37. The innocent decision maker did not have a controlling share, but was part of the decision making process. The Court relied on the fact that the shareholder reviewed financial statements and could have stopped the fraud while it

---

[2] Summerfield also provided Plante Moran the fraudulent investment information that Plante Moran relied on for its accounting.

was occurring. See *id*. at 39 (stating that the shareholder could have *ended* the fraudulent activity).

There is no evidence that this is the case here. In this case, neither Paskin, nor Funk, nor the cemetery commissioner held shares in Summerfield or exercised any level of control over the corporation at the time of the fraudulent investment decisions. The majority recognizes that there is no evidence that, while innocent, any of these parties were decision makers.[3] I cannot conclude that the innocent decision maker exception applies, even presuming it is the law in Michigan.

This Court does not reverse where the trial court reaches the right result for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000). The trial court reached the correct result because, under the wrongful conduct rule, plaintiffs may not hold Plante Moran responsible for any professional negligence. Plaintiffs' claims are based on the alleged malpractice between Plante Moran and Summerfield. To allow plaintiffs—whose claim arises through Summerfield, who in turn committed fraud through Smart—to pursue a cause of action against Plante Moran would be "a mockery." See *id*. at 160. This Court should not "allow the active fraudfeasors (plaintiffs) to prevail against defendants who merely committed malfeasance." *Id*. Because the plaintiffs' claims against Plante Moran are based on the wrongful conduct of Smart, the sole corporate actor, they should be barred under the wrongful conduct rule.

I would affirm the trial court's grant of summary disposition.

/s/ Peter D. O'Connell

---

[3] Plante Moran is not responsible for the lack of facts on this point. To survive a motion for summary disposition, once the nonmoving party has identified issues in which there are no disputed issues of material fact, the burden is on the plaintiff to show that disputed issues exist. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 362. The burden was squarely on plaintiffs to provide some facts showing that a disputed issue existed. Plaintiffs did not provide facts supporting their third level of exception.