*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS NOBLE,

        Plaintiff-Appellant,

v

FAMILY AND FRIENDS FUNLAND, LLC,

        Defendant-Appellee.

UNPUBLISHED
April 29, 2026
8:55 AM

No. 373652
Monroe Circuit Court
LC No. 2023-146712-NO

Before: GARRETT, P.J., and MURRAY and ACKERMAN, JJ.

PER CURIAM.

Plaintiff Nicholas Noble appeals from the trial court's grant of summary disposition to defendant Family and Friends Funland, LLC, in this negligence action arising from a bounce house accident at defendant's indoor play facility. We conclude that plaintiff has raised jury-submissible questions regarding breach and causation, and we therefore reverse and remand for further proceedings.

## I. FACTS

On May 20, 2023, plaintiff—then a few months shy of his 30th birthday—was visiting the home of a friend, Jesse O'Neil. Several other members of O'Neil's family were also present, including his girlfriend and daughter (who was roughly five years old). With the adults looking for a way to spend a spring Saturday with children, O'Neil broached the prospect of going to defendant's facility in The Mall of Monroe. There, defendant operates a play space targeted at children featuring seven bounce houses and additional inflatable slides. Plaintiff, O'Neil, and the others agreed on this plan.

Plaintiff testified that upon arriving, "they told us that adults were free and just the kids got to pay." So the adults paid for the children and then chaperoned them in the play area, which included the adults having some fun themselves, like shooting a basketball. At one point, O'Neil's daughter wanted to play in a "Scooby-Doo!" bounce house and asked plaintiff if he would accompany her. He agreed. There was no attendant supervising the bounce house, in part because defendant staffed only three employees at that time of year. While jumping about inside the bounce house, O'Neil's daughter asked if plaintiff could execute a backflip. He did one, and she

-1-

asked him to do it again. The second time, he landed on his head and seriously injured his neck. He alleges that he was paralyzed for some time and has regained only limited use of his limbs.

Plaintiff then initiated this negligence action. In his complaint—later supported with an "Inflatable, Trampoline, and Amusement Device Expert," Lance Miller—he asserted that industry standards established a responsibility for bounce house operators to provide an attendant at each device being used "to provide instruction and/or behavior correction" for patrons. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the industry standards were not legally binding and that in any event plaintiff had only speculative evidence to support causation. After a hearing, the trial court agreed, concluding that plaintiff could not establish breach or proximate cause. It accordingly granted summary disposition to defendant, and this appeal followed.

## II. STANDARD OF REVIEW

All trial court rulings on motions for summary disposition are reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). For a motion brought under MCR 2.116(C)(10), a court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The court must grant the motion if the evidence "show[s] that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*.

## III. ANALYSIS

Plaintiff challenges on appeal the trial court's conclusion that he cannot establish breach or proximate cause. We agree and reverse.

As an initial matter, there is no reasonable dispute that plaintiff was a business invitee. While defendant charged only children, plaintiff was at least as much an invitee as those children. The nature of the duty owed to invitees of entertainment establishments was expressed in *Lane v B & J Theatres, Inc*, 314 Mich 666; 23 NW2d 120 (1946). There, the Court held that "[p]laintiff was an invitee and, while defendant was not an insurer of her safety, the duty rested on it, and its employees, to exercise reasonable care for her protection against injury in [its] theatre." *Id*. at 671. That is the duty that defendant owed plaintiff—to exercise reasonable care for plaintiff's protection against injury in defendant's establishment.

What a defendant must do to act with reasonable care is therefore not a question of duty; it is instead a question of the standard of care, and therefore of breach. This principle was established in *Moning v Alfono*, 400 Mich 425; 254 NW2d 759 (1977). There, the plaintiff was a child whose eye was injured by another child using a slingshot and sued the manufacturer and distributor of the slingshot. The majority observed that the dissent "declares that there is no legal duty to refrain from manufacturing slingshots for and marketing them directly to children," but the majority said that this "obscures the separate issues in a negligence case . . . to combine and state them together in terms of whether there is a duty to refrain from particular conduct." *Id*. at 432-433. The Court further said that "[i]n a negligence case, the standard of conduct is reasonable or due care." *Id*.

at 443.  This "general standard of care" is then applied by the fact-finder to establish whether the "specific standard of care" was satisfied.  *Id*. at 438.

Here, there is a genuine issue of material fact regarding whether the standard of care was breached.  Plaintiff points in particular to ASTM International standard F2374-22—*Standard Practice for Design, Manufacture, Operation, and Maintenance of Inflatable Amusement Devices*—which says that owner/operators are obliged to "[i]nstruct patrons on proper use of the device prior to participation" and "[a]ctively monitor patron play and enforce rules."  It also says that "[a]n inflatable amusement device should always be supervised by a trained operator/attendant while inflated unless it is secured from unauthorized access."  Plaintiff's expert further supports this by opining that defendant "failed to properly service the Scooby Doo bounce house per industry standards."  It is undisputed that defendant did not satisfy these standards, and a question of fact exists as to whether defendant *ought* to have satisfied them.

Defendant argues that reliance on this standard would be a form of negligence per se, which is improper where the industry standard has not been legally adopted in Michigan.[1]  We disagree.  The existence of the ASTM standard is not *necessarily* proof that defendant breached its duty to plaintiff, but it is *evidence* of it.  "[C]ustom and industry practices are relevant to the issue of due care," so "[a]n argument on the basis of industry standards . . . goes to the question whether a defendant breached its duty of ordinary care."  *Schultz v Consumers Power Co*, 443 Mich 445, 456; 506 NW2d 175 (1993).  Under the ASTM standard, the "[m]inimum number of operators on an inflatable bounce . . . is one (1)," and there is no dispute that did not happen here.  That creates a question of fact whether defendant breached its duty.  A jury is, of course, free to conclude that the industry standard is excessively cautious, or that the context of a quiet spring Saturday afternoon indoors at the mall rather than a busy outdoor summer festival calls for a more relaxed specific standard of care, but nonetheless, the jury must decide.

Defendant also notes that a label affixed to the bounce house entrance stated, "NO flips, wrestling or running," and argues that plaintiff knew he should not perform such maneuvers inside it.  But the label also said, "DO NOT use the ride unless attendant is present," yet the record reflects that defendant only had three attendants on site for approximately seven bounce houses and additional inflatable slides.  In context, defendant effectively invited plaintiff to use the bounce house without an attendant notwithstanding the warning label on the bounce house; if that warning was not adhered to, defendant is in no position to fault plaintiff for not observing another warning on the list.[2]  We find this argument unpersuasive.

We likewise conclude that plaintiff has established a genuine issue of material fact as to proximate cause.  "In a negligence action, a plaintiff must establish both factual causation, i.e.,

---

[1] By comparison, MCL 691.1733(b) adopts certain ASTM standards into Michigan law for trampoline court operators.

[2] The parties also dispute whether the warning label is directed to the owner/operator or the user of the bounce house.  We need not resolve this question, however, because even if the warning was directed to the user, defendant was at least arguably inviting users to disregard it by providing very few attendants in relation to the number of bounce houses present.

'the defendant's conduct in fact caused harm to the plaintiff,' and legal causation, i.e., the harm caused to the plaintiff 'was the general kind of harm the defendant negligently risked.' " *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (citation omitted). Moreover, "there may be more than one proximate cause of the same injury." *Bordner v McKernan*, 294 Mich 411, 414; 293 NW 889 (1940).

Here, plaintiff submitted an affidavit in which he asserts that "[h]ad a Funland employee blown a whistle and told me that flip[s] were not allowed after I did the first flip, I would not have attempted a second one." That creates a question of fact as to whether defendant's failure to intervene is a cause in fact of plaintiff's injury.[3] And if a jury were to find that defendant's specific standard of care involved providing an attendant to supervise and warn users against dangerous behavior,[4] then the injury plaintiff suffered is "the general kind of harm the defendant negligently risked" by not providing such supervision. It is precisely the sort of orthopedic injury that is a foreseeable consequence of a bounce house user performing dangerous stunts inside the device.

We conclude that the trial court erred in holding that plaintiff has not demonstrated jury-submissible questions regarding breach and causation. The judgment of the circuit court is therefore reversed and the matter is remanded for further proceedings not inconsistent with this opinion.


/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman

---

[3] The dissent argues that this affidavit does not create a factual dispute because it contradicts plaintiff's deposition testimony. We disagree. Plaintiff was asked "[d]id you feel that you needed to be supervised while you were in the bounce house like by an employee?" and answered "No. I felt like it was safe." We do not believe the affidavit and deposition testimony actually contradict each other—plaintiff's statement that he felt safe in the bounce house is not a statement that he would have rejected being admonished for jumping. Even in the absence of the affidavit, we also believe that a reasonable juror could conclude, based on the juror's ordinary life experience, that regardless of plaintiff's subjective sense of whether he felt that he needed to be supervised, he would have complied if admonished.

[4] This aspect of the specific standard of care alleged by plaintiff distinguishes this case from the trampoline-related caselaw cited by the dissent. Those cases all turn on a failure to *warn* the injured person of the risks of using a trampoline. Here, by contrast, plaintiff has adequately substantiated his assertion that defendant was obliged to do more than merely warn him and instead to *monitor* his conduct and *immediately intervene* if he acted dangerously. If plaintiff had been injured on his first back flip, we would find these cases more relevant, and plaintiff's ability to prove cause-in-fact would be more debatable, because even if defendant had provided an attendant, that attendant may not have had an opportunity to intervene before plaintiff hurt himself.