*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUDREY GREINER and HAILEY WEISS, by
Next Friend MARY GREINER,

UNPUBLISHED
April 23, 2019

      Plaintiffs-Appellants,

v

No. 340619
Monroe Circuit Court
LC No. 16-138834-NI

R & P INVESTMENTS, INC.,

      Defendant/Plaintiff/
      Counterdefendant-Appellee,

and

MARY GREINER and MORGAN GREINER,

      Defendants/Counterplaintiffs-
      Appellants.

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

In this landlord-tenant dispute, Audrey Greiner and Hailey Weiss, by their next friend Mary Greiner, appeal by right the trial court's orders dismissing their claims against defendant, R & P Investments, Inc.[1] Mary Greiner and Morgan Greiner also appeal by right the trial court's orders dismissing their counterclaims against defendant. We affirm in part, reverse in part, and remand for further proceedings.

---

[1] Although R & P Investments was the initial plaintiff in a related federal matter that was administratively closed by the trial court after consolidation, the majority of the lower court proceedings centered upon the claims brought by Mary Greiner, Morgan Greiner, Audrey Greiner, and Hailey Weiss, who were collectively referred to as plaintiffs. We will continue this naming convention. R & P Investments will be referred to as defendant.

## I. BACKGROUND

In May 2013, Mary and her adult daughter, Morgan, executed a residential lease agreement to lease a condominium within the Courtyards of Dundee from defendant. The lease ran from June 1, 2013, to May 31, 2014, though Mary alleged that she and her family did not move into the unit on a full-time basis until January 2014. Audrey Greiner (Mary's minor daughter) and Hailey Weiss (Mary's minor granddaughter) also resided at the condominium with Mary and Morgan.

Early in the morning on May 25, 2014, Mary called the utility company to report the smell of gas in the condominium. Michigan Gas Utilities (MGU) employee Michael Gorowski arrived on the premises shortly thereafter. In the course of his investigation, he detected 10 ppm of carbon monoxide in the free air and 1,000 ppm of carbon monoxide inside the shared flue that provided ventilation for the furnace and water heater. In his written report, Gorowski noted the possibility of a plugged vent and remarked that carbon monoxide was "entering through water heater vent when furnace is running." He "red tagged" the water heater and furnace and shut off the gas to the condominium. With respect to the water heater, Gorowski wrote, "Control on water heater leaking," and suggested that the thermostat control be replaced. With respect to the furnace, he wrote, "Furnace blowing [carbon monoxide] out of water heater chimney," and suggested service by a licensed contractor. Gorowski inspected the property again on May 26, 2014. After temporarily turning the gas back on, he detected 49 ppm of carbon monoxide near the water heater. In his report, he wrote that the "draft was reversed" when the water heater "fired up," and the dryer in the laundry room was pulling carbon monoxide from the water heater "due to lack of make[-]up air." The Dundee Fire Department also detected "potentially dangerous levels of carbon monoxide" at 10 to 16 ppm, and recommended that plaintiffs leave the premises until repairs could be made.

Bruce Roth, a principal of defendant, testified that on May 25 or May 26, 2014, Mary alerted him that there was a problem with the water heater and indicated that she and her family had suffered carbon monoxide poisoning. Keith Furrow, a licensed mechanical contractor, inspected the water heater on May 26, 2014, and determined that a control valve needed to be replaced. As May 26, 2014, was a holiday, Furrow could not order the part until the following day, at which point he learned that the part would not be immediately available. Roth instructed Furrow to replace the entire water heater instead, and Furrow completed the new installation on or about May 29, 2014. At the same time, Furrow replaced the furnace and water heater flues, connecting the smaller water heater flue above the larger furnace flue. Furrow testified that he typically replaces flues when he installs a new water heater to keep "new with new." He believed that the original flue design—in which the larger furnace flue was connected above the smaller water heater flue—was "within code," but he preferred the arrangement he installed and considered it a "preference" among many mechanical contractors.

Plaintiffs vacated the premises after learning of the carbon monoxide leak and later retained Janni Juhasz, a member of various home inspector associations and certified carbon monoxide and combustion analyst, to determine the cause of the leak. Juhasz inspected several units in the Courtyards of Dundee in July 2014, and opined that the original design of the furnace and water heater flues was improper. She opined that the flues should have been connected "smaller above larger," and explained that "[i]f the furnace is vented into the water heater flue,

the furnace can quickly overtake the water heater exhaust pushing the [carbon monoxide] that has been generated from both appliances back into the living area."

In their complaints,[2] plaintiffs alleged that defendant knew or should have known that the improperly installed water heater and furnace presented a risk of carbon monoxide exposure and breached its duty of care with respect to the premises and, more specifically, those appliances. Plaintiffs also claimed that defendant breached its statutory duty under MCL 554.139 and engaged in unfair, unconscionable, and deceptive acts or practices in violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. After defendant moved for summary disposition, the trial court dismissed plaintiffs' premises liability claim, reasoning that defendant did not breach its duty of care because it reasonably relied upon inspections performed by the village of Dundee when the property was first built.[3] The trial court also granted summary disposition with respect to plaintiffs' claim under the MCPA, concluding that the MCPA protects against affirmative acts that take advantage of a consumer and that a short-term lack of habitability did not amount to a breach of the MCPA. However, it denied defendant's motion for summary disposition of plaintiffs' claim under MCL 554.139(1)(a) because the unit was not fit for its intended use "at least for a period of time." It further held that under *Allison v AEW Capital Mgt, LLP*, 481 Mich 419; 751 NW2d 8 (2008), plaintiffs' remedy was limited to contract damages. After further briefing, the trial court determined that the lease was not a contract of a personal nature and that plaintiffs could only recover economic damages.

By leave of the trial court, defendant filed a second motion for summary disposition. Relying on Justice MARKMAN's concurring opinion in *Lowery v Enbridge Energy Ltd Partnership*, 500 Mich 1034; 898 NW2d 906 (2017), defendant argued that plaintiffs had not established that they were actually exposed to harmful levels of carbon monoxide or demonstrated the amount or duration of their exposure. Plaintiffs did not file a response to defendant's second dispositive motion. The trial court decided the motion without oral argument pursuant to stipulation of the parties and entered an order granting defendant's second motion for summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo whether the trial court properly granted a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The trial court considers only the pleadings and must accept all well-pleaded factual allegations as true,

---

[2] Defendant initially filed suit in federal court against Mary and Morgan for unpaid rent and other damages. Mary and Morgan filed a countercomplaint in that action, while a separate action was initiated by Mary on behalf of Audrey and Hailey in state court.

[3] Although the trial court referred to a lack of causation in its ruling on the record, its explanation and inquiries about what defendant did to warrant liability make it clear that the trial court was focused on the element of breach.

construing them in the light most favorable to the nonmoving party. *Id*. at 119-120. Summary disposition is appropriate under MCR 2.116(C)(8) "where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 119 (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In determining whether a genuine issue of material fact exists, the trial court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Maiden*, 461 Mich at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. When the nonmoving party has the ultimate burden of proof at trial, the moving party can satisfy its burden of production under MCR 2.116(C)(10) by " 'submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim,' *or* by 'demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.' " *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016), quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (alterations in original). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Quinto*, 451 Mich at 363.

### III. PREMISES LIABILITY

Plaintiffs first argue that the trial court erred by dismissing their negligence claim. We disagree.

As an initial matter, we agree with the trial court's conclusion that plaintiffs' negligence claim sounded in premises liability. As this Court has previously explained:

> Courts are not bound by the labels that parties attach to their claims. Indeed, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. In the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury. [*Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012) (citations omitted; alteration in original).]

Plaintiffs sought damages flowing from carbon monoxide exposure as a result of the improper flue design in the laundry room of the leased premises. Because they assert that they were

harmed as a result of a dangerous condition on the land, their negligence claim is governed by premises liability principles. *Id*.

The duty owed by a landowner in a premises liability action depends upon the claimant's status on the land. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). As defendant's tenants, plaintiffs were entitled to the protections afforded to invitees. *Benton v Dart Props Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). "The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt*, 462 Mich at 597. The landowner breaches the duty it owes an invitee when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

Plaintiffs argue that the trial court should have denied defendant's summary disposition motion because defendant did nothing to inspect the previously bank-owned property before renting it to residential tenants. Plaintiffs take issue with defendant's reliance on municipality inspections that took place when the condominium was built in 2006, noting that the village records only reflect a rough-in mechanical inspection and indicate that a final certificate of occupancy was never obtained. Plaintiffs also point to a Dundee ordinance that requires a zoning compliance permit before altering the "kind or class of occupancy" of a building. See Village of Dundee Zoning Ordinance, § 17.03.

The village of Dundee's records included a temporary certificate of occupancy for several condominium units, including the subject property, stating that they were suitable for human habitation. According to Gary Dahl, the village building official, all of the inspectors must complete a rough and final inspection before any certificate of occupancy can be issued. Dahl also indicated that "venting is a mechanical issue," and—contrary to plaintiffs' assertions—a building inspection form reflected a final mechanical inspection on February 23, 2006, at which point "all the duct work and stuff would be connected." Although a final certificate of occupancy was never issued, Dahl explained that a resident can move into a residential unit with a temporary certificate, as long as a bond is posted for unfinished work. The unfinished work noted on the certificate referred to air conditioning units, landscaping, dishwashers and hoods, and energy calculations. Dahl agreed that the scope of the work noted on the temporary certificate did not suggest any problems with the water heater, furnace, or flues. Thus, we reject plaintiffs' implied assertion that the original flue design did not receive village approval.

Like the trial court, we do not believe reasonable minds could conclude that defendant breached its duty of care by relying on the village's previous approval of the flue design. To hold otherwise with respect to a latent defect like the one involved in this case would essentially require defendant to act as an insurer of its tenants' safety, contrary to well-settled principles of premises liability. See *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 94; 485 NW2d 676 (1992). Furthermore, we are unpersuaded by plaintiff's reliance on Dundee's zoning ordinances. Assuming, without deciding, that § 17.03 obligated defendant to secure a zoning compliance permit before altering the "kind or class of occupancy" by leasing the premises to tenants, plaintiffs did not present any evidence demonstrating that the permit process would have

-5-

revealed the potentially dangerous condition of the flue design. Although Juhasz initially averred that the flue design did not comply with applicable building codes, she removed that assertion from her later affidavit. And, as a practical matter, while the use changed from owner-occupied to tenant-occupied, the residential nature of the use remained the same. Plaintiff has not identified any building or mechanical requirements that differ on the basis of who is occupying the property.

Lastly, plaintiffs argue that a reasonable jury could conclude that the addition of a gas dryer in the small utility room some time before their lease "was the last straw—or the final piece to the 'perfect storm'—that allowed the [carbon monoxide] problem to rise to the level it had." But the only evidence presented to the trial court regarding the installation of the dryer was a June 4, 2013 entry on defendant's ledger referring to a "washer/dryer purchase." This does not establish that defendant installed the dryer or had constructive notice that its presence increased the risk of carbon monoxide exposure in the unit before the events surrounding this case occurred. Accordingly, the trial court did not err by granting summary disposition with respect to plaintiffs' premises liability claim.

IV. MCPA

Next, plaintiffs argue that the trial court erred by dismissing their MCPA claim because the MCPA is applicable to residential leases. We agree.

In its motion for summary disposition, defendant argued that plaintiffs' MCPA claim failed as a matter of law because the MCPA does not apply to heavily regulated activities like the leasing of residential property. In response, plaintiffs argued that the MCPA applied to landlord-tenant relationships because § 3 of the Truth in Renting Act, MCL 554.631 *et seq.*, explicitly incorporates the MCPA by providing:

> (1) A rental agreement shall not include a provision that does 1 or more of the following:
>
> * * *
>
> (m) Violates the Michigan consumer protection act, 1976 PA 331, MCL 445.901 to 445.922. [MCL 554.633(1)(m).]

Given this unambiguous incorporation by reference, we agree with plaintiff that the MCPA's exemption for transactions or conduct authorized by a regulatory board, see MCL 445.904(1)(a), does not apply to rental agreements governed by the Truth in Renting Act.

Despite the narrow scope of defendant's motion, the trial court questioned whether defendant's actions violated the MCPA and concluded that plaintiffs' lost use of the condominium for a few days did not amount to a violation of a duty imposed under the act. Notably, defendant never asserted that plaintiffs were unable to establish an MCPA violation. Stated another way, defendant did not make a properly asserted or supported motion for summary disposition on the ground for dismissal actually stated by the trial court. Because plaintiffs were not on notice of the need to respond to that ground for dismissal, they had no obligation to establish a genuine issue of fact as to that element. See *Barnard Mfg Co, Inc*, 285

Mich App at 370 (stating that the nonmoving party has no obligation to respond to an unsupported motion for summary disposition and that the trial court should deny the motion). Although a trial court has the discretion to dismiss a claim sua sponte, it should not do so absent notice and an opportunity to respond, see *Al-Maliki v LaGrant*, 286 Mich App 483, 488-489; 781 NW2d 853 (2009) (holding that the trial court erred by dismissing a claim under MCR 2.116(I)(1) without providing the plaintiff with an adequate opportunity to respond). Plaintiffs did not have adequate notice or a fair opportunity to respond to the trial court's concerns. Therefore, we reverse the trial court's decision to dismiss plaintiffs' MCPA claim on grounds that were not raised in defendant's motion for summary disposition and remand for further proceedings.

## V. STATUTORY COVENANTS UNDER MCL 554.139

Next, plaintiffs argue that the trial court erred by ruling that they were only entitled to recover economic damages arising from defendant's breach of the statutory covenant set forth in MCL 554.139(1)(a).[4] More specifically, plaintiffs argue that a residential lease involves matters of mental concern and solicitude such that recovery of noneconomic damages for defendant's breach of contract is appropriate. Plaintiffs contend that they "are entitled to recover not only the economic damages associated with medical treatment, relocation expenses and the like, but also for the physical injuries they suffered including the emotional distress damages associated with their injuries and the fear and anxiety they suffer from the poisoning." (Footnote omitted.)

It is unnecessary for us to determine whether plaintiffs could recover noneconomic damages under these circumstances because the trial court's subsequent grant of defendant's second dispositive motion renders this issue moot. See *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy.") (quotation marks and citation omitted). Defendant's second motion for summary disposition alleged that plaintiffs' claims failed for lack of causation because they did not present evidence demonstrating exposure to harmful levels of carbon monoxide at the subject property or that their alleged physical injuries were caused by that exposure. Plaintiffs failed to respond to defendant's motion in any manner and therefore failed to satisfy their burden of establishing the existence of a material fact regarding whether defendant's breach of the statutory covenant in MCL 554.139(1)(a) was the proximate cause of their physical injuries and resulting emotional distress. Accordingly, the trial court granted defendant's second motion for summary disposition and dismissed plaintiffs' remaining statutory claims. Because plaintiffs failed to establish a causal link between defendant's breach of contract and the noneconomic damages they sought, a determination of whether plaintiffs could recover noneconomic damages would have no practical effect on the existing controversy.

That being said, plaintiffs present a fourth question for our resolution in their appellate brief: whether the trial court erred by ruling that plaintiffs failed to present evidence of *economic*

---

[4] In pertinent part, MCL 554.139(1)(a) provides that in every lease of residential premises, the lessor covenants "[t]hat the property and all common areas are fit for the use intended by the parties."

damages arising from defendant's breach of MCL 554.139. Despite including this issue in their statement of the questions presented, plaintiffs confine their position to a single footnote asserting that the parties' lease agreement "is sufficient evidence of economic loss that would preclude summary disposition even if [plaintiffs] [are] only entitled to economic losses." Ordinarily, failure to sufficiently brief an issue constitutes abandonment. *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009). Nonetheless, it is readily apparent that the trial court erred by dismissing plaintiffs' claim for violation of MCL 554.139 on the basis of defendant's second, unrebutted dispositive motion because the motion did not address plaintiffs' economic damages. Instead, it strictly argued that plaintiffs' proofs were inadequate to establish a causal link between defendant's breach and plaintiffs' physical injuries. The trial court had previously denied defendant's summary disposition motion with respect to plaintiffs' statutory covenant claim and ruled that plaintiffs' remedy was limited to economic damages. The mere fact that plaintiffs failed to establish causation with respect to their noneconomic damages does not preclude plaintiffs from offering evidence that defendant breached its statutory duty and that plaintiffs suffered economic damages as a result of the breach. And to the extent that the trial court implicitly determined that plaintiffs failed to present sufficient evidence of economic damages, it erred by doing so when plaintiffs were not on notice of a need to respond to that issue or given an opportunity to do so. See *Al-Maliki*, 286 Mich App at 488-489.

## VI. CONCLUSION

The trial court did not err by dismissing plaintiffs' premises liability claim because plaintiffs failed to present evidence establishing a question of material fact with respect to that claim. The trial court, however, erred by dismissing plaintiffs' MCPA and statutory covenant claims on grounds that were not raised by defendant and which plaintiffs had no notice of the need to respond. Consequently, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica