*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARGIO CASTRO,

      Plaintiff-Appellant,

v

TODD RAYNAL DUESETTE and ERICA
SHAVONE DUESETTE,

      Defendants-Appellees.

UNPUBLISHED
June 4, 2019

No. 341695
Wayne Circuit Court
LC No. 16-014200-NI

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff, Margio Castro, appeals as of right the order of the trial court granting summary disposition to defendants, Todd Raynal Duesette and Erica Shavone Duesette, pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTS

This case arises from plaintiff's claim that he suffered injuries as a result of defendant Todd Duesette's negligence while driving an automobile. On November 24, 2013, plaintiff was driving his vehicle in Detroit when he was struck by a car driven by Todd Duesette and owned by Erica Duesette. Plaintiff claims that as a result of the accident, he received significant bodily injuries, including injuries to his neck and shoulders.

The passenger in plaintiff's car, Piantong Prommawonsee, initially testified that he did not remember there being a car collision that day, but then stated that he remembered hearing a bang, and felt the car shake. He was not injured, and testified that he did not remember if plaintiff struck any part of plaintiff's body either on the car or on Prommawonsee, and did not recall plaintiff complaining of any pain. After the collision, both men got out of the car to look for damage to the car; he recalled that the car was drivable but did not otherwise remember the extent of the damage. They drove to the police station, as did defendants, to report the collision. The police report from the accident indicates that plaintiff did not report any injury. Prommawonsee did not recall if plaintiff ever mentioned being hurt in the accident.

-1-

Plaintiff has a history of both work-related accidents and automobile accidents in which he claimed to have sustained neck and shoulder injuries, as well as other injuries. In 1998, plaintiff was involved in an automobile accident, after which he claimed to have suffered injury to his upper chest and spine. He thereafter sought insurance benefits and disability benefits as a result of the alleged injuries. He attempted to return to his job as a hospital cafeteria worker, but was disabled by low back pain. At that time, plaintiff was diagnosed as having long-standing spondylolitic spondylolistheses (a crack or stress fracture in one of the vertebrae) and radiographic abnormality not caused by the 1998 car accident, but possibly "brought to light" by the 1998 car accident.

In 2003, plaintiff again was involved in a car accident, and sought benefits for claimed injuries to his neck, shoulders, upper and lower back, hips, right knee, both feet, hands, and arms. In 2004, an MRI of plaintiff's left shoulder indicated "findings suggestive of tendinopathy involving predominantly the bursal side of the supraspinatus tendon at its musculotendinous junction. A less likely consideration is a partial tear. . . . Hypertrophy degenerative change of the acromioclavicular joint is identified, as well as cystic change within the humeral head at the site of the insertion of the supraspinatus tendon."

In August 2012, plaintiff reported a workplace injury while working construction, claiming injuries to his right shoulder, right wrist, lower back, and right hip. He eventually returned to work with restrictions. In December 2012, while working at a new construction job, plaintiff again reported a workplace injury, alleging he had injured his right arm, which had been twisted while removing a concrete form.

After the November 2013 collision that is the subject of this case, plaintiff reported to the independent medical evaluator, Mark Kwartowitz, D.O., that after the accident he began having pain in his neck and left shoulder. Dr. Kwartowitz concluded that there was no objective evidence of any injury to plaintiff as a result of the November 2013 collision.

Two days after the November 2013 collision, plaintiff returned to his job, which at that time was a labor-intensive job in the construction industry in which he routinely worked disassembling and moving large amounts of concrete by hand. He resumed his regular schedule of a 40-50 hour work week, and continued to work until shortly before Christmas. He resumed the construction job in April 2014, and worked until April 30, 2014, when he reported that he pulled his neck and right shoulder while at work. Plaintiff reported that while working he heard his neck and shoulder "crack" and that the pain was so severe that he had to be driven to the hospital. He resumed work immediately with a lifting restriction, and on May 20, 2014, returned to work with no restrictions. Plaintiff testified that in July 2014 he was fired from that job because he was unable to perform the work.

Plaintiff also continued his recreational activities of attending dance contests and playing bongo drums after the car collision in November 2013. In March 2016, plaintiff attended the Michigan Dance Challenge, and posed for a photo in which he is "dipping" his wife, supporting her body with his right arm and raising his left arm directly overhead. Although plaintiff appeared at his April 21, 2017 deposition with his left arm in a sling, and although plaintiff testified during his deposition that he had not played the bongos since the November 2013 collision because of the pain from his injuries, in June 2016, he performed live percussion at a

dance venue in Southfield, where he was advertised as a main attraction of the event. In January 2017, he performed percussion at the Neche Lounge in Las Vegas where he reportedly "played the bongos all night" and can be seen playing the drums in a YouTube video.

In November 2016, plaintiff filed his complaint initiating this case and alleging that as a result of Todd's negligence in the November 2013 collision, plaintiff sustained severe and permanent injuries, including injuries to his neck and shoulders. Defendants moved for summary disposition, arguing that plaintiff had not established that his alleged injuries were caused by the accident, and also failed to establish that he had suffered serious impairment of body function. The trial court granted defendants' motion for summary disposition, and thereafter denied plaintiff's motion for reconsideration. Plaintiff now appeals to this Court.

## II. DISCUSSION

Plaintiff contends that the trial court erred in granting defendants summary disposition of his negligence claim. Plaintiff argues that the trial court incorrectly determined that he failed to demonstrate that his alleged injuries were caused by the car collision and that he suffered a serious impairment of body function. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

When reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. When a motion is made and supported under MCR 2.116(C)(10), the burden shifts to the nonmoving party to show, by affidavits or other documentary evidence, that there is a genuine issue of material fact. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the nonmoving party does not make such a showing, summary disposition is properly granted. *Id*. at 363.

## B. CAUSATION

Michigan's no fault act, MCL 500.3101 *et seq*., limits tort liability. *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). However, a person may pursue a claim for a "serious impairment of body function" caused by another person's negligent use of a motor vehicle. MCL 500.3135(1). That statutory section provides, in relevant part:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

* * *

> (5)  As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.  [MCL 500.3135(1), (5).]

The elements of negligence are "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).  Thus, to establish a claim of negligence in the ownership, maintenance, or use of a motor vehicle under MCL 500.3135(1), the plaintiff must demonstrate, in addition to the other factors, that the defendant's negligence was the proximate cause of the plaintiff's alleged injuries. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000).

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).  To establish cause in fact, the plaintiff must demonstrate that but for the defendant's actions, the plaintiff's injury would not have occurred. *Weymers v Khera*, 454 Mich 639, 645-646; 563 NW2d 647 (1997).  To establish legal cause, the plaintiff must demonstrate that it was foreseeable that the consequences would arise from the defendant's actions, creating a risk of harm to the victim. *Id*. at 648.  If a plaintiff establishes factual causation, he must then establish legal cause, that is, that the harm caused "was the general kind of harm the defendant negligently risked." *Ray v Swagger*, 501 Mich 52, 64; 903 NW2d 366 (2017) (quotation marks and citation omitted).  However, if the plaintiff fails to establish factual causation, legal causation is not relevant.[1] *Id*. at 64.

The plaintiff bears the burden of setting forth specific facts to demonstrate that the defendant caused his injuries. *Craig*, 471 Mich at 87.  A plaintiff establishes cause in fact sufficient to create a genuine issue of material fact if the plaintiff establishes "a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (citation omitted).  "Mere speculation or conjecture is insufficient to establish reasonable inferences of causation." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003).

In this case, defendants moved for summary disposition, contending that plaintiff had failed to demonstrate that his alleged injuries were caused by the November 2013 collision.

---

[1] In this case, the trial court did not reach the question of legal causation, concluding that plaintiff had not presented evidence sufficient to create a question of fact that the November 2013 collision was the cause in fact of plaintiff's alleged injuries.

Defendants supported their assertions with the report of Dr. Mark Kwartowitz, D.O., who, after examining plaintiff and plaintiff's medical history,[2] reported:

> After review of the medical records, physical examination, and radiographic review, I am unable to conclude with any degree of certainty that Mr. Castro's ongoing LEFT shoulder complaints are causally related to the motor vehicle accident from November 24, 2013. At the time of the evaluation, Mr. Castro denied any prior complaints or injury to his LEFT shoulder. After review of the medical records available to me, this is obviously untrue. MRI imaging prior to the motor vehicle accident is essentially unchanged from his most recent MRI. Thus, I cannot with any degree of medical certainty say that there is any evidence of distinct pathology introduced to Mr. Castro's LEFT shoulder from the motor vehicle accident of November 24, 2013.

> Mr. Castro does also have prior history and treatment as well as MRI imaging to the RIGHT shoulder and I see no evidence of acute, separate or distinct pathology introduced to the RIGHT shoulder from the motor vehicle accident of November 24, 2013.

Plaintiff then had the burden to show through documentation, in response to defendants' motion for summary disposition, that a genuine issue of material fact existed as to whether his alleged injuries were caused by the November 2013 collision. To do so, plaintiff presented his treatment records from Active Body Physical Therapy, and argued that these records represented an opinion by the physical therapists at Active Body that his injuries arose from the November 2013 collision. According to plaintiff, four Treatment and Assessment Plans created by Active Body indicated that plaintiff's neck and shoulder injuries were the direct result of the 2013 collision. A review of the four reports, however, suggests that the reports are simply evaluations of plaintiff's condition by the treatment staff at Active Body and do not represent a medical opinion of causation.

Plaintiff also submitted to the trial court the report of S.W. Bartol, M.D., an orthopedic surgeon who had examined plaintiff on behalf of Allstate Insurance Company on February 18, 2014, for the purpose of determining plaintiff's eligibility for certain benefits.[3] Dr. Bartol stated

---

[2] Although the dissent urges that plaintiff's pre-accident complaints were confined to his *right* shoulder, Dr. Kwartowitz reported that plaintiff's medical history also included complaints of injury to his *left* shoulder, in stark contrast to what plaintiff reported to him. This conclusion is supported by the record, which includes a 2004 medical assessment of plaintiff's claim that as a result of a 2003 car accident, he injured, among other things, his left shoulder.

[3] The record in this case indicates that Dr. Bartol examined plaintiff exclusively for the purpose of determining plaintiff's entitlement to statutory accident benefits under Ontario's Insurance Act. Dr. Bartol's report does not suggest that he made a determination of causation relevant to Michigan's no-fault act, nor did he offer an opinion in that regard. In fact, Dr. Bartol was not deposed in this case, presumably because he was not designated as plaintiff's expert witness regarding causation.

in his report that there was a causal relation between the collision and plaintiff's injuries, but also stated: "There is no evidence of any medical condition that predated the motor vehicle accident that has been exacerbated by the accident." The report indicates that it is based in part on plaintiff's history as reported by plaintiff. Dr. Bartol's report is not sufficient to create a genuine issue of material fact on the issue of causation. Plaintiff's medical history clearly demonstrates that plaintiff suffered from preexisting neck and shoulder conditions, and necessitates comparison of the medical evidence before and after the November 2013 collision to ascertain whether plaintiff's condition changed as a result of the November 2013 collision. Dr. Bartol's report demonstrates that his opinion was made without this necessary comparison of the medical evidence. Rather, Dr. Bartol simply accepted plaintiff's word that he had no preexisting condition and that his symptoms were related to the November 2013 car collision.

In response to defendants' motion for summary disposition under MCR 2.116(C)(10), plaintiff had the burden to show that a genuine issue of material fact existed as to whether the November 2013 collision was the cause in fact of his alleged injuries. To do so, plaintiff was required to establish a logical sequence of cause and effect, *Patrick*, 322 Mich App at 617, and mere speculation is inadequate to meet this burden. See *Sniecinski*, 469 Mich at 140. Because plaintiff's assertion of cause and effect in this case is purely speculative, the trial court correctly determined that plaintiff failed to establish cause in fact.[4]

## C. SERIOUS IMPAIRMENT OF BODY FUNCTION

As noted, under the no-fault act, a person may pursue a claim for a "serious impairment of body function" caused by another person's negligent use of a motor vehicle. MCL 500.3135(1). That statute defines a serious impairment of body function as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). This Court has noted that the "aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).

In *McCormick*, our Supreme Court explained that under the statute the three prongs necessary to establish "serious impairment of body function" are: (1) an objectively manifested impairment, (2) of an important body function that (3) affects the person's general ability to lead his or her normal life. The Court also explained that, initially, "the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries and, if so, whether the dispute is material to determining whether the serious impairment of body

---

[4] We sense that the dissent disagrees. Nonetheless, although we protect with zeal the "bedrock principle" that summary disposition is not warranted when there is a genuine issue of material fact, we remain cognizant that a plaintiff bears the burden of proving that the defendant caused his injuries, that causation cannot be proved with speculation or conjecture, and that, when a motion is made and supported under MCR 2.116(C)(10), the burden shifts to the nonmoving party to demonstrate that there indeed is a genuine issue of material fact. If the plaintiff fails to meet these requirements, summary disposition is properly granted. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

function threshold is met. . . . If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court." *McCormick*, 487 Mich at 215 (citation omitted).

The first prong of the test, an objectively manifested impairment, "is commonly understood as an impairment observable or perceivable from actual symptoms or conditions." *Id*. at 196. "[W]hen considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.'" *Id*. at 197 (citation omitted). An objectively manifested impairment is one "that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196.

Regarding the second prong, a body function will be considered important depending on its "value, significance, or consequence" to the injured person given the relationship of the function to that person's life. *Id*. at 199, 215. The third prong, whether the impairment of an important body function affects the person's general ability to lead a normal life, is a subjective inquiry requiring comparison of the plaintiff's life before and after the accident. *Id*. at 202. The plaintiff's general ability to lead his pre-accident normal life need only be affected, not destroyed; the focus is on whether the impairment affected the plaintiff's ability to maintain his normal manner of living. *Id*. at 202-203.

In this case, plaintiff failed to demonstrate before the trial court that he had a serious impairment of body function. With respect to the first prong of the test, defendant argued before the trial court that plaintiff had not demonstrated an objectively manifested impairment. Defendants relied in part on the report of Dr. Kwartowitz that plaintiff's medical records and imaging studies are identical before and after the November 2013 collision. Defendants also submitted work records suggesting that plaintiff was able to perform the same job immediately after the collision as he had before the collision, and continued with his hobbies of dancing and professional bongo performance. Plaintiff did not thereafter refute this evidence by presenting evidence that plaintiff has an impairment that is objectively manifested.

With respect to the second prong of the test, whether the impairment is important to the injured person given the relationship of the function to that person's life, a neck and shoulder impairment arguably would be important to anyone, and perhaps particularly so to someone working in the construction industry and engaging in dancing and professional musical performance. Plaintiff, however, has not demonstrated that this important body function is impaired.

With regard to the third prong, whether the impairment of an important body function affected plaintiff's general ability to lead a normal life, plaintiff failed to demonstrate that his general ability to lead his pre-accident normal life was affected. In fact, the evidence suggests that plaintiff's life was not affected at all. Although plaintiff in his deposition testified regarding the things he could not do, the evidence demonstrates that after the accident, he continued to work his regular work schedule until April 2014, when he reported that while working he heard his neck and shoulder "crack" and that the pain was so severe that he had to be driven to the hospital. He resumed work immediately with a lifting restriction, and on May 20, 2014, returned to work with no restrictions. Plaintiff also continued his recreational activities of dancing and

playing bongo drums, attending in March 2016 the Michigan Dance Challenge, and performing percussion at dance venues in 2016 and 2017.[5]  Because there appears to be no change in plaintiff's general ability to lead his normal life, the trial court did not err in granting defendants summary disposition, concluding that there was no genuine issue of material fact that plaintiff had not suffered a serious impairment of body function.[6]

Affirmed.

/s/ Jonathan Tukel
/s/ Michael F. Gadola

---

[5] The dissent suggests that plaintiff's January 2017 Las Vegas bongo performance is more sedate than his bongo-playing in a pre-accident video, illustrating that plaintiff suffers an impairment. In reality, the January 2017 Las Vegas performance is miraculous; while wearing a sling on his arm during his deposition in April 2017, just three months after his Las Vegas performance, plaintiff testified that he had not played the bongos since the accident in November 2013, being prevented from doing so by pain.  It appears that the only impairment supported by the January 2017 bongo performance video is an impairment of plaintiff's memory.

[6] Our dissenting colleague writes, without apparent irony, that the majority opinion would serve as a good outline for defendant's closing argument at trial.  We are content to allow the reader of these competing opinions to judge which of them is in the nature of advocacy for one of the parties, and which is a more reasoned and dispassionate analysis of the facts and law.