*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDY SALEH and MIRNA SALEH,

        Plaintiffs-Appellants,

UNPUBLISHED
May 28, 2020

v

SAFECO INSURANCE COMPANY OF ILLINOIS,

        Defendant-Appellee.

No. 345866
Wayne Circuit Court
LC No. 17-007779-NF

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In this action to recover first-party personal protection insurance (PIP) and uninsured/underinsured motorist (UM) benefits under the no-fault act, MCL 500.3101 *et seq*, plaintiffs Andy and Mirna Saleh appeal as of right the trial court's order granting defendant Safeco Insurance Company of Illinois's motion for summary disposition pursuant to MCR 2.116(C)(10) based on its insurance policy's fraud provision. We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

Plaintiffs contend that Mr. Saleh was the victim of a hit-and-run car accident on December 29, 2016. There was no police investigation and no photographs were taken at the scene. Mr. Saleh completed a traffic crash report the day after the accident. According to the report, the accident occurred around 10:00 p.m. and the weather was "clear." The report indicated that an unidentified vehicle hit the driver's side rear or rear panel of Mr. Saleh's Jeep, causing him to veer right into a concrete barrier, the front airbags to deploy, and the vehicle to suffer "disabling damage." Mr. Saleh provided a similar account of the crash in a January 9, 2017 recorded telephone conversation with defendant's representative. Mr. Saleh said he was driving in the rightmost lane of the two northbound lanes of the Southfield Freeway service drive. He was entering the U-turn at Fitzpatrick Avenue to access the southbound freeway entrance when a car traveling in the lane to his left hit his vehicle on the driver's side back door. Mr. Saleh said that snow caused him to lose control of the Jeep, veer right, and hit a concrete barrier. Mr. Saleh indicated that he suffered injuries in a 2015 accident and he believed this collision aggravated those injuries.

Donald Parker, of Exponent Engineering, P.C., conducted a collision damage analysis of Mr. Saleh's accident on defendant's behalf and reported the results to defendant in a report dated April 20, 2017 ("the Exponent report"). Parker inspected the Jeep and downloaded its Event Data Recorder ("EDR")[1] to obtain data relative to the accident. He determined that physical damage to the Jeep and its EDR data were not consistent with the events Mr. Saleh described.

With respect to the physical damage, Parker found that the Jeep's hood showed evidence of more than one low-speed impact and, although the height of the dent on the driver's side of the Jeep was consistent with the height of a vehicle's bumper, the "narrowness" of the crease was inconsistent with a "typical bumper profile." Other characteristics of the crease and of the "local bending of the door and body sheet metal at the rear wheel" indicated that the direction of contact by another object had moved from front to rear, rather than from rear to front as described by Mr. Saleh. In addition, an 8-inch tall concrete curb and a paved sidewalk edged the road on which Mr. Saleh was traveling; yet, there was no damage to the understructure of the Jeep consistent with having hit this curb.

Data retrieved from the EDR, which was produced in table format in the report, was consistent with the physical damage to the Jeep, but inconsistent with a hit-and-run accident as described by Mr. Salah. The data indicated two—not one—frontal impacts occurring "as completely separate events." According to the data, the vehicle was stopped (or going in reverse at one mph) five seconds before each of the two front-impact collisions,[2] the acceleration pedal was moderately applied just under five seconds before impact, and the brake was applied during the final second. The second front-impact collision happened one minute after the first front-impact collision. Both collisions were at low speed, and neither one caused the airbags to deploy.[3] Based on this data, Parker concluded that "[t]he vehicle was driven forward into a barrier or object of some type, then was apparently backed up and driven forward again into a barrier at a slightly higher speed." Further, the EDR data did not "support the curb impact that would have been required in order to collide with the bridge structure at the claimed collision site." Parker

---

[1] The EDR is "a device installed in a motor vehicle to record technical vehicle and occupant information (seconds, not minutes) before, during and after a crash. For instance, EDRs may record (1) pre-crash vehicle dynamics and system status, (2) driver inputs, (3) vehicle crash signature, (4) restraint usage/deployment status, and (5) post-crash data such as the activation of an automatic collision notification (ACN) system." National Highway Traffic Safety Administration (NHTSA) website, nhtsa.gov, accessed May 5, 2020.

[2] The EDR indicated three events, but no data was given for "Event 1."

[3] Regarding deployment of the airbags, Parker noted that neither impact caused the Airbag Control Module (ACM), to command release of the airbags, and that physical evidence suggested that the airbags were released electronically. According to the Exponent report, electronic deployment

> can happen if the ignition is turned off prior to the airbag deployment, and the airbags are deployed on emergency power that is sustained for a short time after. The emergency power will provide for deployment of the airbags, but not necessarily for recording of the event in the EDR. It can also happen if the airbags are caused to deploy using an external power source, with the ignition turned off.

concluded that data from the two recorded collisions was "consistent with a staged attempt to damage the vehicle and attempt deployment of the airbags."

On May 23, 2017, plaintiffs filed a three-count complaint against defendant for unpaid PIP and UM benefits and for loss of consortium. In a letter dated May 25, 2017, defendant informed plaintiffs that it was denying their claim. Defendant explained that its investigation "revealed that the loss was not an accident, but rather an intentionally caused event for the purpose of presenting claims" and that, accordingly, "the Fraud provisions of the policy under which [plaintiffs''] claim was presented were breached."

On May 18, 2018, six weeks after the close of discovery, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10)(no genuine issue of material fact). Defendant alleged in relevant part that it was entitled to summary disposition of plaintiffs' PIP and UM claim under the fraud provision of plaintiffs' insurance policy because plaintiffs had misrepresented Mr. Saleh's crash as a hit-and-run accident in an effort to obtain no-fault benefits. Among the supporting documents defendant attached to its motion was an excerpt from Mr. Saleh's deposition conveying his explanation of the alleged hit-and-run accident that caused him to crash into the concrete barrier, and the Exponent report, which included the findings from the EDR data.

Plaintiffs opposed defendant's motion by attacking the Exponent report as a self-serving document that twisted the facts in favor of defendant and offered no insight into the crash beyond suggestions and possibilities. Plaintiffs attached the report to their response, along with a transcript of Mr. Saleh's January 9, 2017 recorded conversation with defendant's representative, the traffic crash report, and an affidavit from Mr. Saleh in which he attested to the alleged physical consequences of the crash and that his injuries met a "Social Security Administration listing for the spine."

In its reply brief, defendant attached an affidavit from Parker attesting to what the EDR data indicated about the crash. Among other things, Parker attested that analysis of the recorder's data reflected two separate frontal impacts, "with the operator of the vehicle impacting an object from a stopped condition at low but increasing speeds[,]" and that no EDR evidence indicated that the Jeep had hit a curb, as "required in order to collide with the bridge structure at the claimed collision site." Parker further stated, "the two recorded events are consistent with a staged attempt to damage the vehicle and deploy the airbags[,]" and concluded, "with a reasonable degree of scientific certainty," that the EDR data was inconsistent with Mr. Saleh's account of the crash.

On June 15, 2018, one day before oral arguments on defendant's summary disposition motion, plaintiffs filed a motion to compel discovery of the EDR data. Plaintiffs had filed a discovery request on April 3, 2018, the last day of discovery, seeking, among other things, "photographs and recordings of the accident." They claimed in their motion to compel that this phrase included the EDR data and that defendant had refused to turn over the data so that plaintiffs could obtain their own expert analysis. At oral arguments on defendant's motion, plaintiffs urged the trial court to hear their motion to compel before deciding the summary disposition motion. The parties' arguments were otherwise consistent with their summary disposition briefs, and after hearing them, the trial court granted defendant's motion.

Plaintiffs filed a motion for reconsideration, the gravamen of which was that the trial court should reconsider its summary disposition decision because defendant "misled" the court by not turning over requested, discoverable information that was material to plaintiffs' case. Plaintiffs attached to their motion an affidavit from Timothy D. Brown, an accident reconstruction expert. Brown stated that plaintiffs' attorney had contacted him to prepare an accident reconstruction report for the subject accident and informed him that the EDR data had been requested, but not provided. Brown also stated that he had had a chance to review the Exponent report, and in his "expert opinion, Mr. Parker interpreted the data that was most beneficial to his argument and it also appears he has failed to address some of the other data elements in the report that may have been relevant to this case." The trial court denied plaintiffs' motion. This appeal followed.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

Plaintiffs contend that Mr. Saleh's consistent accounts of the crash and certain aspects of the Exponent report and EDR data created a genuine issue of material fact sufficient to survive defendant's motion for summary disposition. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and the trial court granted the motion pursuant to (C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and summary disposition is appropriate where there is "no genuine issue as to any material fact" and the movant is "entitled to judgment . . . as a matter of law[,]" MCR 2.116(C)(10).

In a (C)(10) motion, the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact[,]" MCR 2.116(G)(4), and to provide "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion.[,]" MCR 2.116(G)(3). If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross and Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The opposing party's speculation and conjecture are insufficient to create a question of fact. *Skinner v Square D Co*, 445 Mich 153, 172-173; 516 NW2d 475 (1994).

When deciding a motion for summary disposition, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. See MCR 2.116(G)(5); *Joseph*, 491 Mich at 206. It must draw all reasonable inferences in favor of the nonmoving party, see *Dextrom v Wexford* Co, 287 Mich App 406, 415-416; 789 NW2d 211 (2010), and it may not make findings of fact or weigh credibility, *Skinner*, 445 Mich at 161.

Defendant properly identified a factual issue about which it believed there could be no dispute, and it supported its position with documentary evidence. The fraud provision in plaintiffs' insurance policy states in relevant part that defendant "may void this policy or deny coverage for an accident or loss if you or an insured have concealed or misrepresented any material fact or circumstance . . . ." Defendant argued that plaintiffs made a material misrepresentation when claiming that the crash was a hit-and-run accident, as the physical and electronic crash data evidence showed the accident did not occur the way Mr. Salah described. Instead, the evidence indicated that two minor collisions were intentionally staged. Data from the EDR showed that the vehicle was twice driven forward into an object from a stopped position, at low but increasing speeds, and that the final collision with the object occurred one minute after the immediately prior collision. Neither collision deployed the airbags, which were triggered in some other fashion. The EDR data was inconsistent with Mr. Saleh's account of a hit-and-run accident that caused him to crash into the concrete barrier, and it supported Parker's conclusion that the two collisions were intentionally staged. Plaintiffs did not dispute the accuracy of the EDR data or deny that it provided an objective recording of the crash events, nor did they present an expert witness affidavit or other evidence at the summary disposition hearing to materially contest the conclusions drawn from the data. Defendant met its initial burden as the party moving for summary disposition under MCR 2.116(C)(10), and the burden then shifted to plaintiffs to establish a genuine issue of material fact on the question of whether Mr. Saleh materially misrepresented the nature of the collision and triggered the fraud exclusion, as raised in defendant's affirmative defense. *Quinto*, 451 Mich at 362.

Plaintiffs did not meet their burden to "establish that a genuine issue of material fact exists." *Id*. Plaintiffs argued that the Exponent report supported Mr. Saleh's account of the collision because it showed that his vehicle hit a concrete barrier, that the airbags had been deployed, and that the height of the crease on the driver's side of the Jeep was "not inconsistent" with the height of an automobile bumper. However, none of these facts were disputed. And none of them call into question the EDR data's recording of "two, separate frontal impacts . . . from a stopped condition at low but increasing speeds," nor the EDR's indication that neither impact triggered deployment of the air bags. The uncontested physical and electronic evidence is materially inconsistent with Mr. Saleh's description of the collision.

Plaintiffs also alleged several errors and inconsistencies in the Exponent report, but in only one instance did an alleged error involve the data downloaded from the Jeep's EDR. Plaintiffs contended that the report was inconsistent because on one page it referred to data indicating a 270-degree right turn, and on another page to data indicating a "moderate right turn." What plaintiffs fail to acknowledge, however, is that each reference is to one of the Jeep's two separate impacts with the concrete barrier. There was no inconsistency in the report on that issue.

Plaintiffs claim that the court should have credited Mr. Saleh's testimony regarding the details of the accident because he remained consistent in his version of the events. In deciding a summary disposition motion, the court may not weigh credibility. *Skinner*, 445 Mich at 161. But to survive summary disposition, plaintiffs had to present sufficient evidence from which a reasonable jury could conclude that Mr. Saleh had not materially misrepresented the nature of the accident. Plaintiffs produced no evidence to correlate Mr. Saleh's version of the accident with the uncontested data culled from the Jeep's own EDR, which showed that the accident did not happen the way Mr. Saleh described. See *Barnard Mfg Co, Inc*, 285 Mich App at 374-375.

As noted above, the fraud provision in plaintiffs' insurance policy states in relevant part that defendant "may void this policy or deny coverage for an accident or loss if you or an insured have concealed or misrepresented any material fact or circumstance . . . ." Plaintiffs represented their loss as resulting from a hit-and-run accident that caused Mr. Saleh to collide with a concrete barrier. Undisputed, objective data extracted from the vehicle's EDR and analyzed by defendant's accident reconstruction expert provided a different account. The data revealed that there were at least two, low speed collisions one minute apart, thus indicating that there was no accident and that the crash was intentionally staged. Viewed in the light most favorable to plaintiffs, and giving the benefit of any reasonable doubt to plaintiffs, we conclude that this record does not "leave[] open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. Accordingly, the trial court did not err by granting defendant's motion for summary disposition of plaintiffs' PIP and UM claims based on their affirmative defense tied to the fraud provision.

## B. DISCOVERY

Plaintiffs next argue that even if they failed to present evidence of a disputed material fact, summary disposition was premature because discovery was incomplete and defendant intentionally withheld discovery to prevent them from obtaining their own expert to analyze the EDR data. We disagree.

In *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-93; 769 NW2d 234 (2009), this Court addressed the propriety of granting summary disposition prior to the completion of discovery as follows:

> Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete. However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate. The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position. In addition, a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions. [Citations omitted.]

As already indicated, plaintiffs submitted a discovery request on the last day of discovery that included a request for "photographs and recordings of the accident," which they assert should have included production of the raw EDR data, and they later filed a motion to compel discovery of the data. Thus, the question is whether plaintiffs have shown that earlier discovery of the EDR's raw data stood "a fair chance of uncovering factual support for [plaintiffs'] position." *Id*. at 292.

Plaintiffs argued at the summary disposition hearing that they wanted their own expert to examine the EDR's data, but they presented no evidence that they had hired or consulted an expert or that the expert's independent analysis of the data would result in evidence sufficient to survive summary disposition. See *Gara v Woodbridge Tavern*, 224 Mich App 63, 68; 568 NW2d 138

(1997) (concluding that summary disposition was appropriate because the plaintiff had "offered no evidence that the discovery sought could have established that a dispute did indeed exist").

Considering the affidavit from Timothy Brown that plaintiffs attached to their motion for reconsideration does not change the outcome. Brown opined that "Mr. Parker interpreted the data that was most beneficial to his argument" and "failed to address some of the other data elements in the report that may have been relevant to this case." Brown did not take specific issue with any of the data included in the report, nor did he dispute Parker's conclusions from that data or point to anything in the report that is false. With regard to these "other data elements," Brown suggests no more than that they "may have been relevant to this case." He does not indicate that they would have called into question any of Parker's conclusions about the inconsistency of the EDR data with Mr. Saleh's version of events, or the apparent intentionality of the two EDR-recorded collisions. In short, Brown's affidavit is insufficient to show that his analysis of the EDR would have "st[oo]d a fair chance of uncovering factual support for [plaintiffs'] position." *Marilyn Froling*, 283 Mich App at 292. Thus, even if plaintiffs had submitted Brown's affidavit prior to the hearing on defendant's motion for summary disposition, nothing in the affidavit, viewed in the light most favorable to plaintiffs, raises a genuine issue of material fact regarding whether Mr. Saleh materially misrepresented the circumstances of the collision. On this record, we conclude that the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood