*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PHASE ONE REHAB, LLC,

        Plaintiff-Appellant,

v

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
November 21, 2025
2:18 PM

No. 369413
Macomb Circuit Court
LC No. 2023-000122-NF

Before: GARRETT, P.J., and PATEL and YATES, JJ.

PATEL, J.

The no-fault act, MCL 500.3101 *et seq*., authorizes certain healthcare providers to bring a direct cause of action against an insurer to recover first-party personal protection insurance (PIP) benefits payable to an injured person for qualifying medical services provided. MCL 500.3112 discharges an insurer's liability to the extent that payments have been made, unless the insurer has been notified in writing of pending claims. In this case, Phase One Rehab, LLC submitted claims to Allstate Property & Casualty Company for medical services provided to Ciera Riley. Allstate denied the claims, and in its motion for summary disposition, asserted that it had already paid Riley the maximum benefits under the policy. Phase One argued that Allstate's payment log demonstrated that benefits had not been exhausted at the time that it received Phase One's claims. In its reply, and without proper evidentiary support, Allstate for the first time argued that Riley participated in facilitation in a separate lawsuit that completely discharged Allstate from further liability.

Because Allstate's argument lacked evidentiary support in the record, the trial court erred by granting summary disposition to Allstate under MCR 2.116(C)(10) and we reverse. We disagree with Phase One, however, that Allstate was required to seek a court order under MCL 500.3112 before paying other entities and affirm the trial court on this issue. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

-1-

# I. BACKGROUND

On August 1, 2020, Ciera Riley was injured in an automobile collision. Because there was not a no-fault policy applicable to Riley's injuries, she applied to the Michigan Automobile Insurance Placement Facility (MAIPF) for PIP benefits under the Michigan Assigned Claims Plan (MACP). Riley's claim was assigned to Allstate. In 2021, Riley filed an action against Allstate in Wayne Circuit Court claiming PIP benefits for the injuries that she sustained in the accident.

On January 31, 2022, Riley underwent a right shoulder labral reattachment, rotator cuff repair, and subacromial decompression. Following the procedure, Riley received medical services from Phase One, including durable medical equipment (DME), from February 1, 2022 through March 1, 2022. In March 2022, Riley assigned Phase One "all no-fault benefits presently due or past due incurred as a result of [her] automobile accident(s) and relating to the reimbursement of reasonably necessary products, services, or accommodations" provided by Phase One.

On June 2, 2022, Riley facilitated her claims with Allstate in the 2021 Wayne Circuit Court action. Allstate's facilitation summary disclosed multiple lawsuits brought by medical providers relating to treatment provided to Riley. Allstate also listed 22 providers that had assignments from Riley for no-fault medical benefits arising out of the accident. Phase One was not included in that list. During facilitation, Riley allegedly resolved her claims for all past, present, and future PIP benefits.

On June 24, 2022, Allstate received Phase One's claims for services rendered to Riley from February 1, 2022 through February 24, 2022.[1] Allstate denied the claims on June 28, 2022, stating that "No-Fault medical benefits were discontinued." Allstate instructed Phase One to submit the bills to Riley or her health insurer. In addition, Allstate stated:

> The Michigan Assigned Claims Plan previously reserved its right to seek reimbursement of amounts paid to you[2] or on your behalf in excess of $250,000[.] The matter that gave rise to that reservation of rights has been resolved, and the Michigan Assigned Claims Plan no longer reserves its right to seek reimbursement from you.

On July 28, 2022, Allstate received additional claims from Phase One for services provided to Riley on February 1, 2022 and March 1, 2022.[3] Allstate denied the claims on August 1, 2022. Once again, Allstate stated that medical benefits were discontinued, instructed Phase One to submit the bills to Riley or her health insurer, and noted the matter that gave rise to the reservation of rights had been resolved.

---

[1] The total amount billed was $4,776.

[2] The Explanation of Medical Bill Payment was addressed to Riley and reflects that copies were sent to Riley, Phase One, and the law firm that represented Riley in the 2021 action against Allstate.

[3] The total amount billed was $16,799.

On August 12, 2022, Riley underwent a right knee anterior cruciate ligament reconstruction. Following the procedure, Riley received medical services from Phase One, including DME, from August 14, 2022 through September 24, 2022. In September 2022, Riley assigned Phase One her right to no-fault benefits. On October 20, 2022, Phase One allegedly submitted additional claims to Allstate for the services rendered to Riley in August and September 2022.[4] Allstate did not pay the claims or issue a formal denial.

On January 12, 2023, Phase One commenced this action seeking benefits under the no-fault act. Allstate moved for summary disposition under MCR 2.116(C)(8) and (10) arguing that it "has already reached the limit for an MACP-assigned insurer under MCL 500.3172(7), and is not responsible for any further payments." In support, Allstate provided a document titled "Medical Bill – Loss History" that reflected payments made between September 9, 2022 and March 14, 2023 totaling $250,000.[5] In response, Phase One argued that Allstate's payment log demonstrated that benefits had not been exhausted at the time that it received Phase One's claims, or when the benefits became overdue 90 days after Allstate received the claims. Phase One further asserted that, even if Allstate established that benefits were exhausted, it was liable for unpaid penalty interest and attorney fees for the overdue claims. Additionally, Phase One argued that MCL 500.3112 required Allstate to seek a court order for an equitable apportionment before issuing any payments. Absent such an order, Phase One contended that Allstate could not discharge its liability.

Allstate shifted its argument in its reply brief, asserting that Riley resolved her claims for all past, present, and future PIP benefits through a June 2, 2022 facilitation agreement in her 2021 lawsuit, which was before Phase One presented any bills or an assignment to Allstate.[6] Allstate did not provide a copy of the facilitation agreement or disclose the settlement amount, but asserted that Riley "received payment to resolve [Phase One's] claim and other claims via her settlement agreement." Allstate included a two-page excerpt from its facilitation summary, which listed a number of providers to which Riley had allegedly assigned her right to no-fault medical benefits. Phase One was not listed. Allstate contended, "The actual execution of the Release took additional time because [Riley] and her attorney were contacting all known medical providers and requesting revocations of assignments." Allstate further claimed that Riley attested in the settlement release that she was unaware of any unrevoked assignments.[7] Allstate maintained that it "acted in good

---

[4] The total amount billed was $21,350.

[5] The provider and payee information were redacted from each payment.

[6] Allstate contended that Phase One did not include a copy of an assignment when it submitted its bills to Allstate in June and July 2022.

[7] Allstate did not state when the release was executed. The release is not in the trial court record, and the record does not reflect that a copy was provided to the trial court. Allstate filed a copy of the confidential settlement release under seal with this Court, but we may not consider it. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."). Likewise, we cannot consider the following exhibits that were not part of the trial court

faith at all times and resolved all claims known to it at the time of facilitation," which included Phase One's claim that was incorporated in Riley's facilitation settlement. Allstate asserted that Riley was "the proper party for [Phase One] to seek payment from via her settlement," and contended that Phase One was "trying to 'double dip' and receive benefits from both [Riley] and Allstate."

Following a hearing, the trial court issued an opinion and order granting summary disposition to Allstate under MCR 2.116(C)(10). The trial court found that Riley resolved her PIP action with Allstate through facilitation and, "[f]rom September 2022 through March 2023, *as required by the facilitation agreement*, Allstate paid claims to Riley's providers. The amount total it paid was $250,000, the statutory maximum required by MACP-assigned insurers." (Emphasis added.) Because Allstate did not have notice of Phase One's claims or assignments at the time that the facilitation settlement agreement was entered, the trial court concluded Allstate was discharged from further liability under MCL 500.3112. The trial court additionally found "the application of [MCL 500.3112] to preclude Phase One from receiving PIP benefits is consistent with both the plain language of [MCL 500.3172(7)(a)], as it maintains the $250,000 cap in benefits mandated by that section, and the purpose of section 3112, as it protects Allstate from making a further payment of no-fault benefits after it entered the facilitation agreement in the Wayne County case."

Phase One moved for reconsideration, which the trial court denied. Phase One now appeals.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). When reviewing the motion, a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. On appeal, "[o]ur review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

We also review de novo issues of statutory interpretation. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024).

---

record: June 3, 2022 e-mail confirmation of the settlement, excerpt from Michigan Ambulatory Surgical Records, the May 17, 2016 MRI reports, and the October 8, 2019 office notes.

III.  ANALYSIS

Phase One argues that defendant presented insufficient evidence to establish an exhaustion of allowable expense benefits and thus the trial court erred by granting summary disposition to defendant.  Phase One further asserts that Allstate could not discharge its liability because it failed to seek circuit court approval under MCL 500.3112 before issuing payment to other entities.  We agree, in part.

PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  MCL 500.3107(1)(a).  Under MCL 500.3114(4), there are three levels of priority for insurers: "the person's no-fault insurer,[8] the insurer of a spouse or resident relative,[9] and lastly the MACP.[10]"  *Bauer-Rowley v Humphreys*, 344 Mich App 52, 62; 988 NW2d 721 (2022).  "When an individual cannot obtain no-fault insurance coverage after an accident through ordinary means, the MAIPF fills in the gaps."  *Williamson v AAA of Mich*, 513 Mich 264, 271; 15 NW3d 546 (2024).  The MAIPF adopted the MACP and maintains it as directed by the no-fault act.  See MCL 500.3171(2) ("The [MAIPF] shall adopt and maintain an assigned claims plan.").  "The MACP is a benefit to persons injured in motor vehicle accidents who otherwise do not have applicable insurance benefits."  *Bronner v Detroit*, 507 Mich 158, 174; 968 NW2d 310 (2021).  PIP benefits through the MACP are limited to the $250,000 statutory maximum.  See MCL 500.3172(7)(a) and MCL 500.3107c(1)(b).

Certain healthcare providers may bring a direct cause of action against an insurer to recover benefits payable to an injured person for qualifying medical services provided to that person.  MCL 500.3112 and MCL 500.3157.  "Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments *unless the insurer has been notified in writing of the claim of some other person*."  MCL 500.3112 (emphasis added).  As an assertion that an amount owed has been discharged by payment, MCL 500.3112 functions as an affirmative defense and places the burden on the insurer to come forward with evidence to support this defense.  See MCR 2.111(F)(3) (including among affirmative defenses "payment; release; satisfaction;

---

[8] MCL 500.3114(1) provides "a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."

[9] See MCL 500.3114(1).

[10] "[A] person who suffers accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle who is not covered under a personal protection insurance policy as provided in subsection (1) shall claim personal protection insurance benefits under the assigned claims plan under [MCL 500.3171 to MCL 500.3175].  This subsection does not apply to a person insured under a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under [MCL 500.3107d] . . . ."  MCL 500.3114(4).

discharge"); *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 507 Mich 272, 304; 968 NW2d 367 (2021) (explaining burden of proof applicable to affirmative defenses).

Allstate moved for summary disposition under MCR 2.116(C)(10) asserting that it fulfilled its obligation by tendering the $250,000 statutory limit and thus no benefits were due and owing to Phase One. As the moving party, Allstate bore "the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); see also MCR 2.116(G)(3)(b). If Allstate met its initial burden, the burden would shift to Phase One to establish that a genuine issue of disputed fact exists. *Id*. Phase One did not dispute that Allstate received the claims arising from the January 31, 2022 surgery on June 24, 2022, and July 28, 2022. Phase One also did not dispute that Allstate was not provided with a written copy of the assignments until Phase One filed its complaint in this matter. But Phase One argued that the payment log demonstrated that benefits had not been exhausted at the time that Allstate received Phase One's claims because all of the payments were made *after* Phase One submitted its claims.

In its reply brief, Allstate contended that Riley resolved her claims for all past, present, and future PIP benefits at the June 2022 facilitation, which was before Phase One submitted its bills. Because Phase One was not identified as a provider with an assignment when Riley resolved her PIP claim, Allstate claimed that Phase One's claim "was included in [Riley's] facilitation settlement." It also stated that Riley attested in the settlement release that she was unaware of any unrevoked assignments. Relying on MCL 500.3112, Allstate argued that Phase One was attempting to "double dip" for services that Allstate already paid to Riley through the facilitation agreement. But Allstate failed to support its factual allegations with any documentary evidence.

Despite the lack of documentary evidence to support Allstate's assertions, the trial court criticized Phase One for failing to dispute "any of Allstate's representations concerning the facilitation agreement" or "provide[] evidence to the contrary." However, Phase One could not have disputed the issue in its responsive brief because Allstate did not mention the facilitation agreement or settlement in its initial motion. And because Allstate did not produce the facilitation agreement or settlement release, Phase One had no obligation to come forward with evidence establishing a question of fact whether its claim was included in the alleged facilitation settlement or whether Allstate's payments were made under the terms of the facilitation agreement. See *Oliver v Smith*, 269 Mich App 560, 566-567; 715 NW2d 314 (2006) (explaining that because the defendant "failed to meet his initial burden to provide evidence supporting his contention that his motion for summary disposition should be granted . . . the burden did not shift to [the] plaintiff").

Notwithstanding Allstate's failure to meet its initial burden, *Quinto*, 451 Mich at 362, the trial court granted summary disposition to Allstate under MCR 2.116(C)(10), finding that Riley resolved her PIP action with Allstate through facilitation and, "[f]rom September 2022 through March 2023, *as required by the facilitation agreement*, Allstate paid claims to Riley's providers. The amount total it paid was $250,000, the statutory maximum required by MACP-assigned insurers." (Emphasis added.) The trial court additionally found "the application of [MCL 500.3112] to preclude Phase One from receiving PIP benefits is consistent with both the plain language of [MCL 500.3172(7)(a)], as it maintains the $250,000 cap in benefits mandated by that section, and the purpose of section 3112, as it protects Allstate from making a further payment of no-fault benefits after it entered the facilitation agreement in the Wayne County case." These

conclusions are unsupported by the record. There is no evidence in the record regarding the settlement amount, the terms of the facilitation agreement, the terms of the release, the identity of the providers or payees associated with the payments reflected in the payment log, or whether all the payments in the log were made under the terms of the facilitation agreement.

Recognizing the record deficiency, Allstate has attempted to inappropriately expand the record on appeal. For example, Allstate submitted a copy of the settlement agreement and an e-mail confirming the settlement, explaining, "[T]he initial settlement with [Riley] was for $85,000.00, [but] the medical providers with existing lawsuits settled their various claims after [Riley's] settlement for an amount totaling $250,000.00." Allstate stated that it "exhausted the $250,000.00 MACP Cap on March 8, 2023 via final payment to Central Home Healthcare, which had initiated its provider lawsuit on April 6, 2022." None of this evidence was before the trial court. "Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care,* 285 Mich App at 475-476. Nevertheless, Allstate's arguments on appeal confirm that the trial court's conclusion was based on erroneous factual findings that were unsupported by any documentary evidence. On this record, the trial court erred by granting summary disposition to Allstate under MCR 2.116(C)(10).

In addition, Phase One argues that Allstate was required to seek a court order under MCL 500.3112 before paying other entities, as opposed to Phase One. This argument lacks merit. MCL 500.3112 states, in pertinent part:

> If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled to the benefits, the insurer, the claimant, or any other interested person *may* apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate. [Emphasis added.]

"The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up). "May" is a permissive term, indicating possibilities, not requirements. See, e.g., *In re Forfeiture of Bail Bond*,

496 Mich 320, 328; 852 NW2d 747 (2014).  Accordingly, the trial court appropriately concluded that an insurer is not required to seek court approval before paying no-fault benefits.[11]

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates

---

[11] Phase One also argues that the trial court abused its discretion by failing to grant its motion for reconsideration.  But Phase One did not include this issue in its statement of questions presented and it is therefore waived.  See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal.").  Notwithstanding Phase One's waiver, it is not necessary for us to address this issue based on our conclusion that the trial court erred by granting summary disposition to Allstate.